Decided 6 February, 1906.

## SPRINGER v. JENKINS.

84 Pac. 479.

CHATTEL MORTGAGES—CONVERSION OF CHATTELS BY MORTGAGEE—ACTION FOR CONVERSION—ANSWER IN MITIGATION — NECESSITY.

1. A mortgagee, sued for the conversion of the chattels mortgaged because of his irregularly foreclosing the mortage in good faith, the property having been bought by another, cannot invoke the rule that the mortgagor's measure of damages is the difference between the value of the chattels and the amount of the debt, unless he pleads the amount due in mitigation of damages, since the defense in mitigation is in effect a plea in confession and avoidance, which, in order to be available, must be specially pleaded, under B. & C. Comp. ? 73, declaring that an answer shall contain a denial of each allegation of the complaint controverted by defendant and a statement of new matter constituting a defense.

MATTER PROVABLE UNDER DENIALS.

2. Under the Oregon practice a defendant can prove under a denial of material allegations only such facts as tend to disprove the cause of action ; but other matter in the nature of avoidance, as, a claim of mitigation of damages, must be specially pleaded.

CONVERSION BY MORTGAGEE—PLEA OF MITIGATION OF DAMAGE.

3. The answer of a mortgagee sued for conversion of the chattels mortgaged, in consequence of his irregularly foreclosing the mortgage, which does not show that he was the owner of the mortgage debt at the time of the alleged conversion, that any part of the debt was unpaid, and that the chattels sold under the foreclosure sale were those described in the complaint, is insufficient as an answer in mitigation, so as to reduce the mortgagor's recovery to the difference between the value of the chattels and the amount of the debt.

AGGRAVATED DAMAGES — PARTICULARS OF PLEA.

4. When aggravated damages are claimed under a statute, the statute should be recited in the complaint or the claim should be stated as being made under the terms of the statute.

TROVER — CLAIM BY ADMINISTRATOR OF DOUBLE DAMAGES FOR CONVERSION OF DECEDENT'S ESTATE — PLEADING.

5. An administrator proceeding under Section 1152, B. & C. Comp., for double damages for converting property of the decedent, must plead that his claim is made under that statute, or it will be considered that he is claiming under Section 385, providing for recovering the value of chattels of a decedent converted and the value of the resulting injury.

IDEM — PROOF OF BAD FAITH — NECESSITY.

6. An administrator, in order to recover double damages for the conversion of property of the decedent, as authorized by Section 1152, B. & C. Comp., providing that a person converting to his own use property of a decedent shall be liable to double damages, must show that defendant acted in bad faith ; and proof that he was mistaken in his rights and was ill advised is insufficient.

From Harney: GEORGE E. DAVIS, Judge.

Statement by MR. CHIEF JUSTICE BEAN.

This is an action of trover by L. B. Springer against Thomas E. Jenkins and his brother for the alleged conver-

sion by defendants of certain sheep belonging to the estate of Frank Martin, deceased. The complaint alleges that Martin died in October, 1903, owning and in possession of 1,600 head of stock and sheep, "branded 5 on wool on back, and marked with different earmarks," of the value of $3,500; that soon after his death, and before the appointment of an administrator of his estate, the defendants, without right or authority, took possession of such sheep and converted the same to their own use, by selling them and retaining the proceeds, to the damage of Martin's estate in the sum of $3,500; that after the appointment of plaintiff as administrator, and before the commencement of this action, he demanded of defendants the possession of the sheep or the value thereof. The prayer is for judgment of $7,000, double the amount of damages alleged to have been sustained by the converson.

The defendants for answer admit the death of Martin and the appointment of the plaintiff as administrator of his estate, but deny the number and value of the sheep and the conversion thereof as alleged. For a further and separate defense they aver that on November 1, 1902, Martin made, executed and delivered to them his promissory note, "wherein and whereby he promised and agreed to pay to the defendants the sum of $778, with interest from date at the rate of 10 per cent per annum," and to secure the payment thereof at the same time executed and delivered to them a chattel mortgage on "985 ewes, branded figure 5 on back," a copy of which mortgage is annexed to and made a part of the answer; that subsequent to the execution of the mortgage and prior to the ——— day of November, 1903, Martin and the defendants orally agreed that the mortgage should stand for and cover any future advances which defendants might make to him, and that interest on all sums secured by the mortgage should be due and payable annually; that in pursu-

ance of such agreement defendants did, prior to the date named, advance to Martin $——, all of which had been repaid, except $——; that on the —— day of November, 1903, default having been made in the payment of the interest due on the promissory note mentioned in the mortgage, and Martin having gone away from the county and remained away an unusual length of time without making provision for the care or maintenance of the sheep, and the herder having seized and attempted to sell them under a herder's lien, the defendants, acting under advice of counsel and considering the conditions of the mortgage broken, proceeded to foreclose the same by requesting the sheriff of the county to sell the property therein described in accordance with the provisions of law in respect thereto; that pursuant to such request the sheriff, after due advertisement, sold the property at public vendue to the highest bidder for cash; that such sale was conducted in all respects according to law, and the property was purchased by one Thomas Turnbull, who is now and since that date has been the lawful owner of the same; that since the date of the sale the defendants have not been in possession of the property or the proceeds thereof, except sufficient to satisfy the indebtedness due them and secured by the mortgage.

The reply admits the execution of the chattel mortgage and promissory note therein referred to, the rate of interest thereon, the recording of the mortgage, and the sale of the property in November, 1903, as alleged, but denies all the other allegations of the answer. Upon these pleadings the cause was tried, and resulted in a verdict in favor of the plaintiff for $1,704.99. Upon motion of the plaintiff a judgment was rendered in his favor and against the defendants for $3,409.98, being double the amount of damages so assessed. The defendants appeal.      Reversed.

For appellants there was a brief over the name of *Biggs
& Biggs*, with an oral argument by *Mr. Dalton Biggs*.

For respondent there was a brief and an oral argument
by *Mr. William Rufus King*.

Mr. Chief Justice Bean delivered the opinion.

The jury found from the testimony, under the law as
given to them by the court, that the foreclosure of the
chattel mortgage by the defendants was premature, be-
cause the debt secured thereby was not then due and none
of its provisions had been broken at the time, and there-
fore the foreclosure proceedings were irregular and void
and did not constitute a defense to this action. There
are no errors predicated upon this branch of the case.
The only questions necessary for us to consider arise on
the rulings of the trial court that the defendants could
not show the amount of the mortgage debt in mitigation
of damages, and in entering judgment for double the
amount of damages assessed by the jury.

1. There is a line of authorities holding that, if a chat-
tel mortgage is irregularly foreclosed in good faith and
the property sold to another than the mortgagee, the
mortgagor may treat the transaction as a conversion of
the property by the mortgagee and sue accordingly, and
in such case the measure of damages is the difference be-
tween the value of the property at the time of the con-
version and the amount of the mortgage debt; 2 Cobbey,
Chattel Mtgs. § 1036; 2 Sedgwick, Meas. Dam. (7 ed.) p.
391; *Burton* v. *Randall*, 4 Kan. App. 593 (46 Pac. 326);
*Cushing* v. *Seymour*, 30 Minn. 301 (15 N. W. 249); *Torp*
v. *Gulseth*, 37 Minn. 135 (33 N. W. 550); *Powell* v. *Gag-
non*, 52 Minn. 232 (53 N. W. 1148); *Bryan* v. *Baldwin*,
52 N. Y. 232. But the defendants cannot invoke this
rule, because they have not pleaded the amount due on
the mortgage in mitigation of damages. At common law

a defendant was entitled to give in evidence under the general issue any matter constituting a valid defense, and following this rule, some of the cases cited hold that in an action of trover a defendant may give facts in mitigation of damages without pleading them; but our statute has changed the common-law rule and substituted for the general issue an answer which must contain a general or specific denial of the material allegations of the complaint intended to be controverted and a statement of any new matter constituting a defense or counter claim: B. & C. Comp. § 73.

2. Under this statute the defendant can only put in evidence under the denials such facts as go to disprove the plaintiff's cause of action. If he intends to rest his defense upon any other matter, such as payment, estoppel, former adjudication, legality of consideration, justification, contributory negligence, the negligence of a fellow-servant and the like, it must be pleaded: *Heatherly* v. *Hadley*, 2 Or. 269; *Rugh* v. *Ottenheimer*, 6 Or. 231 (25 Am. Rep. 513); *Konigsberger* v. *Harvey*, 12 Or. 286 (17 Pac. 114); *Buchtel* v. *Evans*, 21 Or. 309 (28 Pac. 67); *Johnston* v. *Oregon Short Line Ry. Co.*, 23 Or. 94 (31 Pac. 283); *Jameson* v. *Coldwell*, 23 Or. 144 (31 Pac. 279); *Clark* v. *Wick*, 25 Or. 446 (36 Pac. 165); *Duff* v. *Willamette Steel Works*, 45 Or. 479 (78 Pac. 363, 668). And so with the defense of mitigation of damages. Such a defense is in effect a plea in confession and avoidance. It amounts to an admission of the cause of action alleged in the complaint, but asserts that plaintiff cannot recover the entire damages sustained by him on account thereof, because of extraneous matter which does not contradict any fact necessary to be established by the plaintiff to authorize a recovery. Now, when we examine the answer in this case, we find that it attempts to set up a chattel mortgage and the foreclosure thereof as a complete defense or bar

to the action. It may be doubted, therefore, whether it could under any circumstances be treated as a partial defense by way of mitigation of damages: *Webb* v. *Nickerson*, 11 Or. 382 (4 Pac. 1126).

3. But, waiving this point, the answer does not contain facts sufficient to constitute such a defense. It is not alleged that the defendants were the owners of the mortgage debt at the time of the alleged conversion, nor that any part of the debt secured by such mortgage was unpaid, nor that the sheep described in the mortgage were the same sheep mentioned in the complaint. These are all matters of essential importance in a plea in mitigation of damages. Without them the plaintiff would not be informed of the facts intended to be relied upon as a defense and could not be prepared to meet them on the trial. There was no error, therefore, in the ruling complained of.

4. The remaining assignment of error is predicated upon the action of the court in rendering judgment against the defendants for double the amount of damages as found by the jury. This judgment was based on Section 1152 of the statute which provides:

"If any person shall, before administration is granted, embezzle, alien, or in any way convert to his own use any of the property of a deceased person, he is liable to the executor or administrator in double the amount of damages which may be assessed therefor."

If the rule governing actions under statutes giving aggravated damages is to be applied to this section, the complaint does not state facts sufficient to entitle plaintiff to a recovery thereunder, because it does not recite the statute nor in any way allude to it. The general rule is that when aggravated damages are given by a statute, "the demand for such damages must be expressly inserted in the declaration, which must either recite the

statute or conclude to the damage of the plaintiff against the form of the statute": *Chipman* v. *Emeric*, 5 Cal. 239; *Neff* v. *Pennoyer*, 3 Saw. 495 (Fed. Cas. No. 10,085); *Livingston* v. *Platner*, 1 Cow. 175.

5. There are two sections of the statute providing for actions by an executor or administrator against persons who intermeddle with the property of a decedent: Sections 385 and 1152. By the former the action is "for the value of all property so taken or received, and for all injury caused by his [defendant's] interference with the estate of the deceased"; and by the latter the defendant is made liable for double the amount of damages which may be assessed against him. It is but reasonable, therefore, that, if an executor or administrator desires to proceed under Section 1152, he should so state in his complaint, so that the defendant may be advised of that fact; and, if he does not, the action should be treated as brought under Section 385, to recover the actual damages sustained.

6. But, however this may be, we are of the opinion that Section 1152 does not apply to a case where the defendant acted in good faith under color of legal. right, supposing he had title to the property or a right to enforce a lien thereon, though he should subsequently be unable to establish such title or right. The statute is highly penal in its consequences, and was evidently intended to punish those who might wrongfully or in bad faith interfere with, convert to their own use, or dispose of the property of a deceased person, by mulcting them in double damages; and its language should, we think, be so construed. To subject a defendant to the penalty given by the statute, it should appear that he was an intermeddler, and acted from wrong motives or in bad faith; otherwise, the executor or administrator should be satisfied with the ordinary remedies given him by law: *Roys* v. *Roys*, 13 Vt.

543; *Batchfelder* v. *Tenney*, 27 Vt. 578. It is not alleged, nor does it appear, that the defendants did not act in the utmost good faith in attempting to foreclose their mortgage. They may have been ill advised, or may have mistaken their rights; but, until it is made to appear that they acted from wrongful motives or in bad faith, the plaintiff is not entitled to recover double damages from them.

The judgment of the court below will therefore be reversed, and the cause remanded for such further proceedings as may be proper, not inconsistent with this opinion.

REVERSED.

---

Decided 20 February, 1906.