Argued Dec. 8, 1909, decided Jan. 4. Rehearing denied Feb. 15, 1910.

## SWANK v. ELWERT.

[105 Pac.' 901.]

PLEADING—MOTION TO STRIKE OUT—STATUTORY PROVISIONS.

1. A motion to strike out part of an answer as sham, frivolous, and irrelevant is authorized by Section 86, B. & C. Comp., which permits irrelevant or redundant matter to be stricken on motion of the adverse party, and such a motion is not in conflict with Section 76, providing that sham, frivolous, and irrelevant answers may be stricken on motion; for, where one of the grounds stated for striking out a portion of the answer is irrelevancy, the motion may be directed to a part of the answer only.

LANDLORD AND TENANT—LIEN FOR RENT—ENFORCEMENT.

2. Under Section 423, B. & C. Comp., providing that a lien on personal property other than that of a judgment or decree shall be foreclosed by suit, the lien of a landlord on the tenant's furniture, reserved in the lease, must be so foreclosed, where the lease contains no agreement as to the mode of enforcement, and a private sale of the property amounts to a conversion.

CHATTEL MORTGAGES—NATURE OF MORTGAGE—TITLE TO PROPERTY.

3. A chattel mortgage creates only a lien, the mortgagor retaining the general title and the right to possession until condition broken, but on default the lien is converted into a qualified ownership in the mortgagee, entitling him, under Section 5636, B. & C. Comp., to possession, and enabling him to maintain an action to recover such possession; but the mortgagor's title is not extinguished by the possession of the mortgagee after default, and it continues until the lien is foreclosed strictly according to the terms of the mortgage, or in the manner provided by law.

CHATTEL MORTGAGES—RIGHTS OF MORTGAGOR—ACTIONS FOR CONVERSION.

4. Where a chattel mortgagee is lawfully in possession, and has irregularly foreclosed the mortgage and sold the property to another, the mortgagor may treat the transaction as a conversion of the property.

TRESPASS—NATURE AND ELEMENTS OF TRESPASS.

5. In actions for trespass to personal property, the gist of the action is the disturbance of plaintiff's possession.

TROVER AND CONVERSION—NATURE AND ELEMENTS OF CONVERSION—
WRONGFUL SALE.

6. In trover, the defendant is supposed to be in possession of the goods lawfully by finding, and the gist of the action is an unlawful con-

version of them to his own use while in possession, and the action may be brought against any person who, while in the possession of personal property of another, sells it, or uses it without the consent of the owner.

·TROVER AND CONVERSION—ELEMENTS—ASSERTION OF OWNERSHIP.

7. Trover will lie against a person dealing with chattels not belonging to him in a manner inconsistent with the rights of the true owner.

CHATTEL MORTGAGES—RIGHTS OF PARTIES—ACTIONS FOR CONVERSION.

8. Either party to a chattel mortgage has a right of action against a third party who has converted the property, because the act of conversion is inconsistent with the right of property of each party.

LANDLORD AND TENANT — ACTION BY TENANT FOR CONVERSION — WRONGFUL SALE OF TENANT'S GOODS—PLEADING.

9. In an action by a tenant against the landlord for conversion of the property of the tenant, the landlord alleged a lien on the property for rent, and that there were two mortgages on the property which were past due, and that the amounts due for rent and on the debts secured by the mortgages greatly exceeded the value of the property, and that plaintiff had no equity therein. *Held*, that the allegation as to the rights of the mortgagees to recover the amounts due on the mortgages, to the extent of the mortgage liens, was relevant as a plea in bar *pro tanto* of plaintiff's right of recovery.

JUDGMENT—CONCLUSIVENESS—PERSONS NOT PARTIES.

10. In an action against a landlord for conversion of the tenant's property, the landlord alleged that there were two chattel mortgages on the property which were past due, and that, because of default in the payment of the chattel mortgages, the plaintiff was not entitled to bring an action for the conversion of the property, and that a company claiming to be the owner of the notes and mortgages had brought an action against defendant to recover possession of the property, which resulted in a judgment of dismissal of the action, and that this action by the tenant was prosecuted at the instigation and for the sole and exclusive benefit of said corporation. *Held*, that since the company's claim of ownership was disputed, and the finding was against the validity of the claim, the adjudication was *res inter alios acta*.

TROVER AND CONVERSION—MEASURE OF DAMAGES.

11. As a general rule, the measure of damages for conversion is the market value of the property at the time and place of the conversion, if it has such value, but if it has no market value at the time and place of conversion, and it is more particularly valuable to the owner than any one else, then it may be estimated with reference to its value to him; but, before resort may be had to such method of establishing value, it must be affirmatively shown that there is no market value.

LANDLORD AND TENANT—WRONGFUL ENFORCEMENT OF LIEN—MEASURE OF DAMAGES.

12. Where a tenant's lease has been terminated by the re-entry of the lessor for failure to pay rent, and the furniture in the rented building is subject to a lien for rent then overdue, the measure of damages for an illegal enforcement of the lien is the fair market value of the property, and not its value for a particular use in a particular building; there being nothing to show that the tenant was about to engage in business at another location with the furniture.

EVIDENCE—VALUE OF PROPERTY—OFFER TO PURCHASE.

13. In an action by a tenant against a landlord for conversion of the

tenant's furniture by selling the furniture to enforce the landlord's lien
for rent, evidence that the tenant had an offer of a stated amount for
the furniture sold by the landlord, but that the landlord would not trans-
fer the lease, is inadmissible to prove the value of the furniture, and is
not responsive to the question as to what was the value of the furniture,
as the offer was burdened with the condition that the lease should be
transferred, and was not evidence of the market value of the property,
but of its value for a particular use.

APPEAL AND ERROR—HARMLESS ERROR—ADMISSION OF EVIDENCE.
14. In an action for conversion of furniture used in a rooming house,
the erroneous admission of testimony as to its value for use in the
house where it was used is not cured by an instruction that the market
value of the property was not its value for rooming purposes where it
was located, but that the jury must take into consideration all the
circumstances surrounding the property, the reasonable purpose for which
it might be used, and its condition, and from all these say what is the
market value of the property, as to cure an error in admitting evidence,
the jury must be directed to disregard it, and the instruction must make
clear the evidence referred to, and not refer in a general way to a certain
kind of testimony.

CHATTEL MORTGAGES — CONVERSION OF PROPERTY BY MORTGAGEE —
MEASURE OF DAMAGES.
15. As a general rule, the measure of damages in an action by a
mortgagor against a mortgagee for conversion of mortgaged property is
the difference between the value of the property at the time of the
conversion and the amount of the mortgage debt.

LANDLORD AND TENANT — ENFORCEMENT OF LIEN — DAMAGES FOR
UNLAWFUL ENFORCEMENT—SET-OFF OF LIEN.
16. In an action against a landlord by the tenant for conversion of the
property of the tenant by an unlawful enforcement of the lien of the
landlord for rent on the property, the landlord can offset his lien for
rent against the damages of the tenant.

LANDLORD AND TENANT—ENFORCEMENT OF LIEN—ACTION BY TENANT
FOR CONVERSION—PLEADING.
17. In an action against a landlord for conversion of the tenant's
property by an illegal enforcement of the landlord's lien on the property
for rent, the lien for the rent was not specifically pleaded by the land-
lord in mitigation of damages, but was set up as a general defense.
*Held,* that the landlord was entitled, under such pleading, to offset the
amount of the rent due against the damages recovered for the conversion
of the property.

DAMAGES—"MITIGATION OF DAMAGES"—"AGGRAVATION OF DAMAGES."
18. The term "mitigation of damages" is properly applied only to
actions where the damages are not capable of exact pecuniary measure-
ment, and is used in contradistinction to the term "aggravation of
damages"; and, where matter in aggravation of damages is proper,
matter in mitigation may be shown.

From Multnomah:    THOMAS O'DAY, Judge.

Statement by MR. JUSTICE SLATER.

The defendant C. P. Elwert, on November 16, 1905,
leased his building in Portland to one Hutchinson, for the

term of one year, for rooming house purposes, at a stipulated rental, payable monthly in advance,. on the 16th of each month. The lease contained a clause to the effect that the lessor should "hold the furniture as a lien for the rent," which was not to be removed from the building during the term of the lease until all rents were paid; that the furniture should not be sold without the consent in writing of the lessor, and that upon the lessee's failure to observe or perform any of the covenants thereof, the lessor might re-enter at any time during default, and repossess the premises, forcibly if necessary, without being taken or deemed guilty of trespass, and without prejudice to any remedies which might otherwise be used for collection of arrears of rent. The lease was recorded in the miscellaneous records of the county, and, with the consent of the lessors, was afterwards successively assigned and transferred a number of times, together with the title to the furniture placed therein, finally becoming the property of the plaintiff, Mrs. Sarah Swank, subject, however, to two chattel mortgages placed on the furniture by her predecessors in interest. The execution and recording of each of these mortgages antedates the making of the lease. The prior mortgage was to secure a promissory note of the then owner of the goods, made in favor of George McGowan, for the sum of $250, and the' junior mortgage was to secure a similar note in favor of Mrs. M. C. Blurock, for the sum of $500. Immediately prior to September 16, 1906, which fell upon Sunday, plaintiff was in arrears on her rent to the amount of $30, and on the following day an additional $100 became due, which plaintiff failed to pay. On September 18th C. M. Elwert, acting for C. P. Elwert, re-entered, dispossessed plaintiff, and immediately sold and delivered to defendant A. Schuback, a dealer in second-hand goods, all of the furniture remaining in the building, for the sum of $360. On July 17, 1907, plaintiff brought this action against the

defendants to recover damages for the conversion of the furniture, alleging, in substance, that on the 18th of September, 1906, she was the owner and entitled to the immediate possession of the goods, particularly describing them; that on that day the defendants wrongfully, unlawfully and forcibly obtained possession of the goods, and converted the same to their own use, to her damage in the sum of $1,500.

The answer denies the averments of the complaint, but admits that defendants, at the time stated, took possession of certain personal property, a schedule of which is attached to the answer as an exhibit, the value of which, it is alleged, was no greater than $360. As an affirmative defense there is averred the making and recording of the lease and the particular provisions thereof above stated, a default in the payment of the rent, to the amount of $130, on September 18th, and that on that date plaintiff quit and abandoned the premises, and surrendered to defendant C. P. Elwert the property in controversy. As a part of the same defense there is averred the making, recording, and the terms and amounts of the two chattel mortgages, coupled with the allegation that at the time possession was taken by defendants, the debts secured thereby were past due, and default had been made in the payment thereof, which default had continued until the commencement of this action; that the amounts due for rent and on the debts secured by the mortgages greatly exceeded the value of the property, and that, by reason thereof, plaintiff had no property or equity therein; that on or about September 18, 1906, by reason of the default in the payment of the notes and mortgages, Blurock and McGowan, the mortgagees, claimed to be the owners of the property, and right to its possession, and duly demanded of the defendants possession thereof, with the knowledge and consent of the plaintiff, who refused to pay the amount due on the mortgages, and that by reason

thereof Blurock and McGowan became the owners and entitled to the possession of the property, as against the plaintiff, who ceased to be the owner and entitled to possession; that about September 21, 1906, the Ames Mercantile Agency, a corporation, claiming to be the assignee and owner of the notes and mortgages, brought an action against defendants to recover possession of the furniture, which resulted in a judgment of dismissal of the action; and that this action is prosecuted by plaintiff at the request and instigation, and for the sole and exclusive benefit, of said corporation. All of that part of the answer, referring to the two chattel mortgages, the default in the payment thereof, the demand by the mortgagees on the defendants for possession, and the judgment in the replevin action were, on plaintiff's motion, stricken out by the court as irrelevant.

The reply put at issue the remainder of the answer and the cause was tried before a jury. Exceptions were taken by the defendants to the admission of plaintiff's testimony on proof of value and damages, and to the instructions of the court, which will be noticed in the opinion. The verdict was in plaintiff's favor in the sum of $720. From the judgment entered thereon defendants have appealed.

REVERSED.

For appellant there was a brief and an oral argument by *Mr. A. E. Clark.*

For respondent there was a brief over the names of *Messrs. Caldwell & Reeder,* and *Mr. Walter S. Hufford,* with oral arguments by *Mr. George W. Caldwell* and *Mr. Hufford.*

MR. JUSTICE SLATER delivered the opinion of the court.

MR. JUSTICE KING, dissenting.

1. The motion to strike out was upon the grounds that the parts of the answer to which it was directed were sham, frivolous, and irrelevant. It is claimed by defend-

ants' counsel that this motion is not available to plaintiff, because it did not assail the entire answer, but only specified portions thereof, and in support of his contention he cites Section 76, B. & C. Comp., providing that "sham, frivolous, and irrelevant answers and defenses may be stricken out on motion, and upon such terms as the court may in its discretion impose." He also relies upon the case of *Brown* v. *Baker,* 39 Or. 66, 71 (65 Pac. 799: 66 Pac. 193), interpreting a similar statute, applicable to the reply. There the motion was directed to the new matter of the reply, which presented an apparent departure from the averments of the complaint, and was based on Section 79, Hill's Ann. Laws 1892, which is now Section 80, B. & C. Comp. It was held that the section of the statute cited contemplates an attack upon the entire reply for the reasons assigned; hence the motion as made was not proper remedy. But here the motion is directed to specified portions of an answer, provided for by Section 86, B. & C. Comp., which permits irrelevant or redundant matter inserted in a pleading to be stricken out on motion of the adverse party. As the motion under consideration includes the averment of irrelevancy, and is directed to a part only of the answer, the question is properly raised.

2. On the merits of this motion it is necessary to consider the relationship of the parties. The plaintiff was the owner of the property, which was subject to two mortgages, placed thereon by her predecessors in interest. It is not specifically alleged in the answer that she had personally obligated herself to pay these mortgages, but it is alleged that they were due, and that default had been made by the plaintiff in the payment thereof, and that the conditions of the mortgages had been broken. It will therefore be assumed that this averment amounts to a charge that she was personally bound to pay the debts thereby secured; and she, therefore, stood in the position of a mortgagor in default. The defendant, C. P. Elwert,

by the terms of the lease, had a lien on the goods for arrears of rent, subsequent, however, to the lien of the mortgages, which lien was in the nature of a chattel mortgage, and by its terms Elwert was entitled to possession upon default in payment of rent. The lease contains no agreement of the parties as to the manner of its foreclosure. They were bound, therefore, to proceed by suit, according to Section 423, B. & C. Comp. Not having done so, but having sold the property at private sale to Schuback, one of the defendants, such sale amounted to a conversion of the property, for which defendants are liable in damages to the owners.

3. By the motion to strike from the answer the averments of these mortgage liens and the breach of the terms thereof at the time of the alleged conversion, a question is raised as to who has the right of action to recover the legal damages—whether the plaintiff has that right alone, or the mortgagees, or both, and what the measure of damages is. It is the contention of the defendants that possession, or the right of possession, in the plaintiff at the time of the conversion is essential to the maintenance of the action, and that, as the plaintiff was in default in payment of the mortgages at and prior to the time of the conversion, the right of possession by Section 5636, B. & C. Comp., was cast upon the mortgagees; that they thereupon became the owner of said property, and could maintain an action to recover the possession thereof, or an action in the nature of trover to recover the value. That they can maintain such an action has been held in *Rienstein* v. *Roberts,* 34 Or. 87 (55 Pac. 90: 75 Am. St. Rep. 564), and *Backhaus* v. *Buells,* 43 Or. 558 (72 Pac. 976: 73 Pac. 342.) But it is contended that plaintiffs, being out of possession and not entitled to possession, have no right of action in trover for the misappropriation of the property. To support the primary contention reliance is put upon certain decisions from other states, to

the effect that a mortgagor, neither in possession, nor entitled to possession, at the time of the alleged conversion, cannot maintain trover (*Middlesworth* v. *Sedgwick,* 10 Cal. 392; *Dungan* v. *Ins. Co.,* 38 Md. 242), and that when, because of condition.broken, the mortgagee is entitled to possession, the moragagor has not such title as will sustain trover (*Landon* v. *Emmons,* 97 Mass. 37; *Goodrich* v. *Willard,* 2 Gray [Mass.] 203.) In the states referred to the effect of a chattel mortgage is to invest the mortgagee with the general title, as well as a right to the possession of the property mortgaged, the mortgagor retaining no interest except the right of redemption, but by consent of the mortgagee, expressed in the mortgage, the mortgagor may retain possession until condition broken, in the event of which the former has the right of possession added to the general title formerly possessed. In this State, however, the law is quite different. The execution of a chattel mortgage creates only a lien upon the property, the mortgagor retaining the general title, and the right to possession until condition broken. On default however, the lien of the mortgage is converted into a qualified ownership of the mortgaged property in the mortgagee, entitling him to possession, and enabling him, in case his right is disputed, to maintain an action to recover possession. Section 5636, B. & C. Comp.; *Case Thresh. Mach. Co.* v. *Campbell,* 14 Or. 460 (13 Pac. 324); *Marquam* v. *Sengfelder,* 24 Or. 2 (32 Pac. 676); *Reinstein* v. *Roberts,* 34 Or. 87 (55 Pac. 90: 75 Am. St. Rep. 564); *Mayes* v. *Stephens,* 38 Or. 512 (63 Pac. 760: 64 Pac. 319.) When, however, the morgagee of chattels, after condition broken, secures possession of mortgaged property, the mortgagor's title is not extinguished, but continues until the lien is foreclosed, strictly according to the terms of the mortgage, or in the manner provided by law. *Backhaus* v. *Buells,* 43 Or. 558 (72 Pac. 976: 73 Pac. 342.)

4. Because of this general right of property, although

the mortgagee of chattels is lawfully in possession, and has irregularly foreclosed the mortgage, and has sold the property to another, the mortgagor may treat the transaction as a conversion of the property, and sue accordingly. *Springer* v. *Jenkins,* 47 Or. 502 (84 Pac. 479).

5. In actions for trespass to personal property the gist of the action is the disturbance of the plaintiff's possession.

6. In trover the defendant is supposed to be in possession of the goods lawfully by finding, and the gist of the action is an unlawful conversion of them to his own use, while so in his possession. 21 Pl. & Pr. 1014. The action may be brought against any person who, having in his possession, by any means whatever, the personal property of another, sells it or uses it without the consent of the owner. Sutherland,. Damages (3 ed.) § 1108. Lord Mansfield thus defined the action: "In form it is a fiction; in substance it is a remedy to recover the value of personal chattels wrongfully converted by another to his own use. The form supposes that the defendant might have come lawfully by it; and, if he did not, yet by bringing this action the plaintiff waives the trespass. No damages are recoverable for the act of taking; all must be for the act of converting. This is the tort or *maleficium,* and to entitle the plaintiff to recover two things are necessary: First, property in the plaintiff; secondly, a wrongful conversion by the defendant." *Cooper* v. *Chitty,* 1 Burr, 31.

7. In this State conversion has been defined as a dealing by a person with chattels not belonging to him, in a manner inconsistent with the rights of the true owner. *Velsian* v. *Lewis,* 15 Or. 539 (16 Pac. 631: 3 Am. St. Rep. 184) ; *Ramsby* v. *Beezley,* 11 Or. 49 (8 Pac. 288.)

8. So either party to the mortgage has a right of action against a third party, who has converted the property, because the act of conversion is inconsistent with the right

of property of each, with that of the mortgagor because of his general right of property, and with that of the mortgagee because of his special property.

9. It has been held that a second mortgagee may maintain an action against a first mortgagee for the conversion by the latter of personal property included in both mortgages, and recover the value of the property converted (not exceeding the amount due upon his lien), less the amount due upon the first mortgage. *Clendening* v. *Hawk,* 8 N. D. 419 (79 N. W. 878.) It would seem, therefore, that although plaintiff has a right of action against the defendants, the averment in the answer of facts constituting concurrent rights of action in the mortgagees to recover of the defendants' damages, to the extent of the amounts due on the mortgages, would, to the extent of the mortgage liens, be relevant as a plea in bar *pro tanto* of plaintiff's right of recovery. The case of *Luse* v. *Jones,* 39 N. J. Law, 707, 708, is to the contrary, and is very much in point on this question. The plaintiff was engaged in keeping a boarding house. The defendant wrongfully entered her house, removed the furniture, and sold it as the property of her husband. Plaintiff demanded damages for the value of the goods taken. It was made to appear in the evidence that plaintiff had given a chattel mortgage upon the property to another, and had remained in possession after condition broken. The question was thus presented whether a mortgagor of chattels who, for his own benefit, and with the consent of the mortgagee, retains possession and use after condition broken may recover in trespass the full value of the goods against a stranger, who seizes and converts them. After stating the relative legal right of a chattel mortgagor and mortgagee, Mr. Justice DIXON, at page 712 of the opinion, says: "The principles which regulate the action of trespass for an injury to chattels so owned are stated with precision by Sargeant Sayer under the title just quoted

(Bac. Abr., Trespass, C, 33, 34) : 'It is, upon the whole, clear that both the person in whom the general property is, and the person in whom the special property is, may maintain an action of trespass for the taking or injury of a personal chattel by a stranger, while it was in the actual possession of the latter; but, if either of these persons have recovered in such action, this shall oust the other of his right of action. Otherwise the trespasser would be liable to make a second satisfaction for the same injury.' These principles are well settled (citing authorities). From the rule that a recovery by one of such owners is a legal bar to an action by the other, it follows that either, suing, must recover as damages all that both are entitled to in the thing; that is, its full value." The rule seems to apply with peculiar force to the mortgagor suing; for, being personally obligated to pay, he has a right to have the value of the mortgaged property applied towards the liquidation of his debt. And when it is alleged in the answer, as it has been in this case, that plaintiff sues with the express consent of the mortgagees, and for their benefit, there can be no question that the additional facts averred, viz., that these mortgages were given and were unpaid, and that a default had occurred at the time of the alleged conversion, are irrelevant to the issue.

10. The fact that the Ames Mercantile Agency, a corporation, claiming to be the assignee and owner of said notes and mortgages, and to be the owner and entitled to the possession of the property, by virtue of the mortgages, brought an action in claim and delivery against these defendants for the possession of the goods, and that such action resulted adversely to the corporation, is not material to the issue, because, upon an inspection of the findings and judgment therein, copies of which have been attached to the answer, it appears that the corporation's claim of ownership of the notes and mortgage by assignment was disputed, and the finding was against the

validity of the claim. Therefore the judgment was a dismissal of the action. This reduces the adjudication to *res inter alios acta.* There was no error in sustaining the motion to strike out.

11. Over defendants' objections plaintiff's counsel was permitted to interrogate her witnesses as to the value of the furniture for rooming house purposes, and as to its value while located in the rooming house at the time of the alleged conversion. The testimony of her witnesses was confined to the value of the property for the purposes used. The general rule for the measure of damages for the destruction or conversion of personality is the market value of the property at the time and place of the conversion, if it has such value. *Prettyman* v. *O. R. & N. Co.,* 13 Or. 341 (10 Pac. 634) ; *Iler* v. *Baker,* 82 Mich. 226 (46 N. W. 337) ; *Luse* v. *Jones,* 39 N. J. Law, 707 ; Sutherland, Damages (3 ed.)° § 1109. But if the property has no market value at the time and place of conversion, either because of its limited production, or because it is of such a nature that there can be no general demand for it, and it is more particularly valuable to the owner than any one else, then it may be estimated with reference to its value to him. Sutherland, Damages, § 117 ; *Iler* v. *Baker,* 82 Mich. 226 (46 N. W. 337.) Before resort may be had to such method of establishing value, it must be affirmatively shown that there is no market value.

12. The property in controversy is shown to be only ordinary household goods, as serviceable in private housekeeping as in public rooming houses. Moreover, plaintiff's lease was terminated by the re-entry of the lessor, because of her default in payment of rent, so that she was not entitled to the continued use of the property in connection with the building, nor is it shown that she was about to, or did, engage in the same business at another location ; but, the property being subject to liens for debts then overdue, which plaintiff was not able to pay, it was

liable to be sold under foreclosure of those liens. The true measure of damages was therefore the sale price of the goods. If the lessor irregularly foreclosed his lien for rent, then he must account to the general owner and other prior special owners for the fair market value of the property, and it was error to permit proof of a value for a particular use in a particular building.

13. Plaintiff was asked what was the value of this furniture and equipment in this house at that time for rooming purposes, on the 18th day of September. Over defendants' objections she was permitted to answer as follows: "Why, for rooming house purposes it is worth $1,500. The day she took it, I had a lady to take it for $1,000 cash, but she [defendant C. M. Elwert] would not transfer the lease." Defendants promptly moved to strike out the latter part of the answer referring to the offer, on the ground that it was incompetent, not responsive to the question, and not proper evidence of value. The motion was denied. This was error. Assuming, without deciding, that an unconditional, *bona fide* offer to purchase would be competent evidence of value, yet this was not such an offer. It was burdened with the evident condition that the purchaser was willing to give the amount stated, provided she also received an assignment of the lease, and was permitted to make continued use of the property in the building where previously it had been used by plaintiff. This is not evidence of a market value, but of value for a particular use.

14. The fact that the Elwerts refused to consent to a transfer of the lease cannot alter the case, for they were not bound to do that upon plaintiff's request, but on the contrary, might refuse without reason. The erroneous admission of this testimony was not cured by giving an instruction to the effect that the market value of this property was not its value for rooming house purposes, where it was located, but that the jury must take into

consideration all the circumstances surrounding the property, the reasonable purpose for which it might be used, and its condition, and from all these say what is the market value of the property. Error in admitting evidence may be cured by directing the jury to disregard it, but the instruction must make clear the evidence referred to; and a general statement to the jury that a certain kind of testimony is not to be considered will not be sufficient. *State* v. *Aiken*, 41 Or. 294 (69 Pac. 683); *Kohne* v. *White*, 12 Wash. 199 (40 Pac. 794); *Tucker* v. *Hamlin*, 60 Tex. 171; *Henkle* v. *McClure*, 32 Ohio St. 202.

15. The court instructed the jury to the effect that, if the defendants forcibly, and against plaintiff's will, took possession of the property under their claim of lien, then they waived their lien, and they cannot offset it, in this case, against plaintiff's claim for the value of the property. The general rule for the measure of damages, in an action by a mortgagor against a mortgagee for a conversion of mortgaged property, is stated by Mr. Chief Justice BEAN in *Springer* v. *Jenkins*, 47 Or. 502, 505, (84 Pac. 479), to be the difference between the value of the property at the time of the conversion and the amount of the mortgaged debt, and this rule is supported by an abundance of authority.

16. A more general statement of the rule may be found in an extended note at page 392 (7 ed.) of Sedgwick, Measure of Damages, in part as follows:

"Where the defendant has such a lien on the property or other equitable interest in it, as security for a debt, as would have rightfully entitled him to effect a sale of it in case of the debtor's default, the measure (of damage) is the residuary value of the chattel after deducting the amount of the debt. Indeed, wherever the defendant, although in the wrong in assuming or retaining possession which rightfully belongs to the plaintiff, has yet a legal or equitable interest in the chattel, the action is now treated on equitable principles, and the recovery limited to the actual net amount of plaintiff's claim."

Among other cases cited in the note, in support of the rule, is that of *Johnson* v. *Stear*, 15 C. B. (N. S.) 330, where the majority of the court held that the wrongful acts of a pawnee did not annihilate the contract between the parties, nor his interest in the contract, and he had a right to have his debt recouped in the assessment of the damages. The giving of the instruction was erroneous.

17. It is contended, however, by plaintiff's counsel that it was not prejudicial to defendants, because the lien of rent due was not specifically pleaded in mitigation of damages, but as a general defense, and therefore not available. *Springer* v. *Jenkins,* 47 Or. 502, 505 (84 Pac. 479, is relied upon as authority for this contention. It is there stated that new matter, in mitigation of damages, is not a general defense, or bar to the action, but is a plea in confession and avoidance, and must be so pleaded to be available. It was assumed, however, without discussion, that, in an action by a mortgagor against a mortgagee for conversion of the chattels mortgaged, the amount of the recovery is the full value of the property, and that, if reduced by the amount due on the mortgage, it was by way of mitigation. We do not consider that to be law; and, as the decision in that case was put upon another ground, we are free to consider it as an open question.

18. The term "mitigation of damages" is properly applied only to actions where the damages are not capable of exact pecuniary measurement; that is, where the amount is, to a certain extent, within the control of the jury, and is used in contradistinction to the term "aggravation of damages." Where the amount of damages depends upon the effect of the injury on the feelings, then the circumstances of the injury and the position in life of the parties have a bearing on the amount which should be awarded as compensation. So in the case of an injury to liberty, to family relations and social standing, and where exemplary damages are to be given, such circumstances have a

great bearing on the defendant's malice. Where matter in aggravation of damages is proper, then matter in mitigation may be shown. But "these terms * *" says Mr. Sedgwick, in the eighth edition of his work on Damages, vol. 1, § 51, "are properly applied only where evidence is presented to the jury for the purpose of affecting its estimate of damages in this class of cases"; and he treats it as a matter of evidence only. Id. § 52. Now, in the case in hand, the amount of damages is supposed to be capable in law of exact pecuniary measurement. The rule stated in *Springer* v. *Jenkins* for the measure of damages, in cases of this character, is the difference between the value of the property at the time of the conversion and the amount of the mortgage debt. The mere statement of the rule shows that the allowance of the amount of the mortgage is of the substance of the rule, and not by way of mitigation; that the recovery is the value of plaintiff's right in the thing, the residuary value of the chattel after deducting the amount of the debt. In *Farrar* v. *Paine,* 173 Mass. 58 (53 N. E. 146), it was held that the defendants' claim is not recoupment, properly so called; that the plaintiff stands upon her title; that defendants have an interest in the property to the extent of the sum due them, for which the property was held as security, and as against them the plaintiff, to that extent, is not entitled to compensation. The plea of the matter constituting the lien, and the amount due thereon, to that extent, controverts the averment of plaintiff's title, and is a plea in bar *pro tanto.*

Other errors are assigned; but, as they will not probably recur upon a new trial, they will not be considered.

For the errors noted and considered, the judgment is reversed, and the cause remanded for a new trial.

REVERSED.

MR. JUSTICE KING delivered the following dissenting opinion.

I dissent from the views announced, so far as they hold that the amount of the lien may be shown without pleading it as a partial defense. It is manifest that the matter pleaded in this case was intended as a complete defense. In *Webb* v. *Nickerson,* 11 Or. 382, 385 (4 Pac. 1126), Mr. Justice THAYER, speaking for the court, says: "At common law every plea must go to the whole cause of action and be an entire answer thereto on the record. This was a fundamental principle, and it prevails under the Code, except that matter may be set up by way of answer which constitutes only a partial defense, but in the latter case it must be pleaded as a partial defense, and not assume to answer the entire cause of action. *Fitzsimmons* v. *Fire Insurance Co.,* 18 Wis. 246 (86 Am. Dec. 761.)" It can make no difference whether you call it "a plea in *pro tanto,*" a partial defense, or a defense in mitigation of damages, the effect is the same. Nor do I agree with the statement to the effect that the word "mitigation" is only proper in the class of cases enumerated in the majority opinion. This expression appears to be in common use in the class of cases under consideration. It is so employed in 13 Cyc. 68, 69, and in some of the authorities there cited; also in *United States* v. *Ordway* (C. C.) 30 Fed. 30, 32, in which Mr. Justice DEADY had under consideration this character of defense, where he held such plea necessary, and in *Morrison* v. *Crawford,* 7 Or. 472, 476, as well as in *Springer* v. *Jenkins,* the case criticised. I regard the effect of the conclusion reached by the majority on this point as inharmonious with Section 73, B. & C. Comp., and in conflict with the rule enunciated on the subject in the case from which the above excerpt is taken, and amounts to the overruling on this point of Case *Thresh. Mach. Co.* v. *Campbell,* 14 Or. 460, 469 (13 Pac. 324), and *Springer* v. *Jenkins,* 47 Or. 502 (84 Pac. 479.)

See also *Bergman* v. *Inman,* 43 Or. 456, 464 (72 Pac. 1086: 73 Pac. 341: 99 Am. St. Rep. 771), where this court cites with approval Pomeroy's Code Rem. (3 ed.), holding such plea necessary.

It will not do to say that the case of *Springer* v. *Jenkins* was determined upon another feature, for it appears to be the second point considered, and one of the two principal questions there before the court, but, in view of the possibility of a new trial another matter was also passed upon. If it may be held to be dicta, which I do not concede, which point determined is entitled to that classification? I think clearly that the declarations upon the subject here involved cannot be classed as dicta, for, as said by the United States Supreme Court in *Fla. Cent. Ry. Co.* v. *Schutte,* 103 U. S. 118, 143 (26 L. Ed. 327) in referring to a point decided by the Florida Supreme Court: "The point was directly made by the pleadings and as directly passed on by the court. Although the bill in the case was finally dismissed because it was not proved that any of the state bonds had been sold, the decision was in no just sense dictum. It cannot be said that a case is not authority on one point because, although that point was properly presented and decided in the regular course of the consideration of the cause, something else was found in the end which disposed of the whole matter. Here the precise question was properly presented, fully argued and elaborately considered in the opinion. The decision on this question was as much a part of the judgment of the court as was that on any other of the several matters on which the case as a whole depended." See, also, *Kirby* v. *Boyette,* 118, N. C. 244, 254 (24 S. E. 18) ; *Buchner* v. *C., M. & N. W. Ry. Co.,* 60 Wis. 264 (19 N. W. 56) ; *Kane* v. *McCown,* 55 Mo. 181, 199; *Ocean Beach Ass'n* v. *Brinley,* 34 N. J. Eq. 438.