Argued at Pendleton October 30, affirmed December 19, 1922, rehearing denied January 23, 1923.

## LAAM *v.* GREEN.

(211 Pac. 791.)

**Landlord and Tenant—Evidence Held Sufficient to Support Finding That Lessor, Sued for Conversion, Prevented Lessee from Digging Potatoes.**

1. In a lessee's action for lessor's conversion of part of a crop of potatoes after plaintiff's alleged abandonment thereof, evidence *held* sufficient to support a finding that defendant, through her husband and another acting on her behalf, interfered with or prevented plaintiff from digging the potatoes at the proper season.

**Evidence—Agency Presumed to Continue Until Shown Terminated.**

2. An agency may be presumed to continue until shown to have been terminated.

**Landlord and Tenant—Lessor Holding Chattel Mortgage on Crop Held not Entitled to Harvest It on Lessee's Default After Forbidding Him to Do so.**

3. Where lessor's husband who took part in the negotiations for the lease, and one employed by her to dig lessee's unharvested potato crop after the latter's alleged breach of the terms of a chattel mortgage given to secure payment of the rent, twice forbade him to harvest the crop, and the husband's action was never disaffirmed by lessor until the time of trial, she was not entitled to dig the potatoes to salvage something for the rent after the expiration of the lease on the ground that plaintiff had abandoned them; he having no other reasonable choice than to submit to her dominion as chattel mortgagee.

**Evidence—Neighboring Farmer's Testimony as to Productiveness of Land Held Admissible on Issue as to Value of Crop Converted by Lessor.**

4. In a lessee's action for damages for lessor's conversion of part of a potato crop, a farmer of several years' experience, who had raised potatoes on adjoining land the same year, was acquainted with the land, and knew the manner of cultivation of the crop during such season, could testify as to about how much the land would produce.

**Evidence — Appeal and Error — Witness' Qualification to Express Opinion is for Trial Judge.**

5. A witness' qualification to express an opinion is for the trial judge, whose determination will not be disturbed on appeal except for abuse of discretion.

**Evidence—Weight of Opinion Testimony for Jury.**

6. The weight of testimony is for the jury.

**Witnesses—Sick Witness' Testimony at Former Trial Admissible.**

7. Under Section 727, subdivision 8, Or. L., a witness' testimony at a former trial is competent, where it is shown that he is unable to testify at the second trial by reason of sickness and inability to leave his house, though no physician's certificate is produced.

**Evidence—Amended Answer Containing Same Allegations as Second Amended Answer Held Admissible in Evidence.**

8. In a lessee's action for damages for lessor's conversion of part of a potato crop, an amended answer, which ceased to be part of the record on the filing of a second amended answer, *held* admissible in evidence to show that defendant took possession under the terms of a chattel mortgage, which had been broken, according to the allegations of such answer, as well as of the second amended answer, which the jury had a right to inspect and consider.

**Landlord and Tenant—Lessor Pleading Breach of Chattel Mortgage on Crop and Seizure Thereof After Expiration of Lease Held to have Taken Possession by Virtue of Chattel Mortgage.**

9. In view of Section 2546, Or. L., providing that the tenant of land leased for farming purposes shall have free access thereto, after termination of the lease, to harvest any crop planted by him before service of notice to quit, a lessor pleading a chattel mortgage on the crop and breach thereof by lessee in defense to les-

see's action for conversion of part of the crop, but further claiming that such part was taken after expiration òf the lease, must be held to have taken possession by virtue of the mortgage, as the mere termination of the lease would not prevent lessee from harvesting the crop or authorize lessor .to do so.·

### Chattel Mortgages—Do not Transfer Title.

10. A chattel mortgage does not transfer title to the mortgaged property, but is only a lien.

### Chattel Mortgages—Mortgagor may Sue for Conversion by Mortgagee Taking Possession by Any Other Method Than That Provided by Mortgage or by Law.

11. When a chattel mortgagee, after condition broken, secures possession of the mortgaged property, mortgagor's title is not extinguished, but continues until the lien is foreclosed strictly according to the terms of the mortgage or in the manner provided by Section 10184, Or. L., and, if possession is· taken by any other method, mortgagor may waive the trespass and sue for conversion, though mortgagee is lawfully in possession and has irregularly foreclosed the mortgage and sold the property to another.

### Trover and Conversion—Conversion of Part of Chattel Conversion of Whole.

12. Conversion of part of a ·chattel is a conversion of the whole, when the circumstances evince a purpose to control or dispose of the whole.

### Chattel Mortgages—Measure of Damages for Mortgagee's Conversion of Mortgaged Property Stated.

13. The measure of damages for mortgagee's conversion of the mortgaged property is the difference between the market value thereof at the time of the conversion and the amount of the mortgaged debt.

### Trial—No Error in Denying Motions for Nonsuit and Directed Verdict Where Plaintiff's Testimony, Though Disputed, is Sufficient for Jury.

14. Where plaintiff's testimony, though disputed by defendant, was sufficient to take the case to the jury, there was no error in denying defendant's motions for a nonsuit and a directed verdict.

### Trial—Instruction That Burden of Proof to Establish Case was on Plaintiff Properly Refused Where Portion of His Case is Set Forth in Defendant's Answer.

15. Where the court fairly submitted· the issues raised and a portion of plaintiff's case was set forth in defendant's answer, an instruction that the burden of proof to establish his case is on plaintiff was properly refused as requiring him to prove facts admitted by defendant.

### Landlord and Tenant—Whether Lessor's Employee Exercised Due Care in Digging Potatoes Seized Under Chattel Mortgage Held for Jury.

16. Whether one employed by lessor to harvest lessee's potato crop, after taking possession on lessee's breach of a chattel mortgage thereon, exercised such care as good husbandry required, *held* for the jury.

From Baker: GUSTAV ANDERSON, Judge.

In Banc.

This is an action for damages for conversion of personal property. Defendant appealed from a judgment, entered upon a verdict for plaintiff, in the sum of $750.

The complaint shows that plaintiff rented from defendant a 20-acre tract of land in Baker County for the season of 1919, and planted and cultivated a crop of potatoes thereon. On October 10th defendant took possession of the land and prevented plaintiff from harvesting the crop of the value of $1,000, and thereafter defendant wrongfully converted the same to her own use to plaintiff's damage in the sum of $1,000.

Defendant denies the complaint, except the renting until October 20, 1919. Defendant further pleaded that the rental was $250 for which plaintiff executed to defendant a promissory note due October 20, 1919, secured by a chattel mortgage on the potato crop; that plaintiff without the consent of defendant sold and converted a portion of the potatoes, and failed to pay the rent; that, the remainder of the potatoes, which plaintiff refused to dig, having been left in the ground and abandoned by plaintiff and the lease having expired, defendant in order to salvage something for rent was compelled to and did dig all she could of the crop about October 30th, consisting of 4,170 pounds the value of which, after deducting expenses amounting to $115.10, she credited on plaintiff's note, and counterclaimed for $168.25 the balance of the note. The reply put in issue the new matter of the answer.

The testimony tended to show among other things the following: In April, plaintiff talked with Mr. and Mrs. Green together about renting the land and Mr. Green showed him the land, and they agreed upon the rental and the mortgage. Plaintiff was to plant, cultivate and dig potatoes on the land and sell them. Plaintiff planted and cultivated between eighteen and nineteen acres. After the crop was ready for harvest, between October 1st and 10th, he sent his two stepsons to dig the potatoes. He states, "They stopped the boys, and I went down to the store to see what the rumpus was." Mrs. Green, who owns the store, was not there, but Mr. Green was in charge and informed plaintiff that he had another man, Mr. Gibbons, to dig the potatoes and that plaintiff could not dig the potatoes and said, "If you do I will cause trouble." Plaintiff said, "If those potatoes freeze somebody will have to pay for them." Mr. Green told plaintiff and his stepson "to keep out of the spud patch down there." Mrs. Green never disaffirmed the action of her husband until the time of trial. Plaintiff also testified in answer to interrogatories, as follows:

"Q. Did you ever have a conversation with Mrs. Green in regard to the sale of these potatoes, and, if so, tell us what it was? A. I told her that I had $300 worth sold when I dug the potatoes and I was going to turn her over the $250.

"Q. What did she say? A. She said, 'No, I will take those potatoes,' and I asked her what she would give me and told her what I was getting for them, and she said she wouldn't pay three cents, and I told her I wouldn't sell them to her then.

"Q. What did she offer to pay you for them? A. About two, I think."

This conversation appears to have been in September. Mrs. Green testified that she employed Mr.

Gibbons to dig the potatoes. The testimony tended to show that Mrs. Green failed to harvest a large part of the crop, and tended to support the allegations of plaintiff's complaint.

Counsel for defendant, by timely objections, a motion for nonsuit, a motion for a directed verdict for defendant, and objections and exceptions to the instructions refused and given, laid the foundation for several assignments of error.

After the controversy arose it appears that defendant took possession of the crop, dug a portion of the potatoes and credited the market value of the portion harvested upon plaintiff's rent note.

AFFIRMED. REHEARING DENIED.

For appellant there was a brief over the names of *Mr. J. B. Messick* and *Mr. William H. Packwood,* with an oral argument by *Mr. Messick.*

For respondent there was a brief over the name of *Messrs. McColloch & McColloch,* with an oral argument by *Mr. Frank C. McColloch.*

BEAN, J.—1. Defendant contends that there was no competent testimony to show that Mrs. Green interfered with or prevented plaintiff from digging the potatoes at the proper season. With this we are unable to agree. We think the testimony tended to show that both her husband, Mr. Green, and Mr. Gibbons were acting on her behalf in the matter. As plaintiff testified, Mr. Green was present with Mrs. Green and plaintiff and took part in the negotiations for the lease and showed plaintiff the land. Plaintiff dealt with the two Greens. After plaintiff's helpers had been prevented from digging the potatoes by Gibbons, Mrs. Green's employee, Laam went

to her place of business to see about the matter and found her husband, who had formerly acted for her, in charge of the store, and was threatened with trouble by him if he proceeded to care for the crop.

2. An agency when once proved may be presumed to continue until it is shown to be terminated: *McLeod v. Despain,* 49 Or. 536 (90 Pac. 492, 92 Pac. 1088, 124 Am. St. Rep. 1066, 19 L. R. A. (N. S.) 276).

3. Twice plaintiff was forbidden by Gibbons and Mr. Green to harvest the crop, and, as Mrs. Green held the chattel mortgage the terms of which she claimed had been broken, plaintiff could reasonably do nothing else but submit to her dominion over the property. The trial court, however, withdrew the consideration of the statements of Mr. Green from the jury, for the reason that his agency was not sufficiently proven.

4. Defendant proceeded to take possession of the crop according to the terms of her mortgage and to harvest the same or a portion thereof. The trial court instructed the jury to the effect that if Mrs. Green failed to dig the crop of potatoes carefully and in a husbandlike manner she was liable for such lack of care. Considerable testimony was introduced as to the amount of the crop raised on the land which was not harvested. Defendant complains for the reason that plaintiff's witness Morris was permitted in his testimony to estimate the crop grown on the 20-acre tract that season. Mr. Morris owned similar land adjoining the rented land, was acquainted with the land upon which the crop was raised and saw it frequently during the season of 1919. He had been a farmer for a number of years, and he raised a crop of potatoes on his adjoining land that same year. A portion of the crop not having been har-

vested it was not possible to introduce direct evidence of the amount and value of the crop. It was competent for Morris as a farmer who was acquainted with the land and knew the manner of cultivation of the crop raised during the season of 1919, to testify about how much the land would produce in order to arrive at the value of the property converted and fix the amount of damages. This was the only method of proving the facts which were essential to the due and proper administration of justice. It was not a mere opinion of the witness, but a conclusion of fact to which the judgment and knowledge of the witness had led him. Necessarily the assertion was largely an opinion, but in effect it was a compound question of fact and opinion: *Nutt* v. *Southern Pac. Co.,* 25 Or. 291, 296 (35 Pac. 653); *Farmers' Bank* v. *Woodell,* 38 Or. 294 (61 Pac. 837, 65 Pac. 520); *National Bank* v. *Fire Assn.,* 33 Or. 172, 181 (53 Pac. 8, 50 Pac. 568). As stated by Mr. Justice WOLVERTON in the case last mentioned, at page 182:

"Where the witness has had the means of personal observation, and the facts and circumstances which led the mind of the witness to a conclusion are incapable of being detailed and described so as to enable anyone but the observer himself to form an intelligent conclusion from them, the witness may be allowed to add his opinion or the conclusion of his mind."

5. The trial court properly ruled that the evidence offered was the best obtainable. The qualification of a witness to express an opinion is for the trial judge to determine, and will not be disturbed on appeal except for abuse of discretion: *Multnomah County* v. *Towing Co.,* 49 Or. 204, 221 (89 Pac. 389).

6. The weight of the testimony is for the jury to determine: 11 R. C. L., p. 574, § 7.

7. Defendant objected to the reading to the jury of the testimony of the witness T. I. Dunn taken at a former trial of this case. It was shown that this witness was sick and unable to leave his house. Therefore he was unable to testify at the second trial. No certificate of a physician was produced. Such testimony was competent under Section 727, subdivision 8, Or. L. Further objection to this testimony was made upon the same ground as the objection to Mr. Morris' testimony. There was no error in admitting such testimony.

8. Over defendant's objection the court admitted in evidence the amended answer of defendant. A second amended answer was filed in the case. Therefore the first amended answer ceased to be a part of the record. The first amended answer was competent to show the taking possession of a portion of the crop under the terms of the chattel mortgage which had been broken, according to the allegations contained therein. We fail to see any difference in this pleading admitted in evidence, and the second amended answer on file in the case which the jury had a right to inspect and consider. There was no error in admitting such testimony.

9. The chattel mortgage introduced in evidence by the defendant provided that in case of default it should be foreclosed in the manner provided by law for foreclosure of chattel mortgages which do not within themselves provide their own method of foreclosure and the consideration of which is less than $500. The defendant in her answer pleads the chattel mortgage on the crop, and that the conditions thereof had been broken by the plaintiff by a sale of some of the potatoes, but further claims that she

took the remainder of the crop after the term of the lease had expired.

10. The statute provides that when the leasing or occupation is for the purpose of farming or agriculture the tenant or person in possession shall, after the termination of such lease or occupancy, have free access to the premises to cultivate and harvest or gather any crop or produce of the soil planted or sown by him before the service of notice to quit: Section 2436, Or. L.; *Hostetler* v. *Eccles,* 98 Or. 355, 359 (195 Pac. 166). Therefore, the mere termination of the lease would not prevent the plaintiff from harvesting the crop and would not authorize the defendant to do so. According to the allegations of her answer it must be held that she took possession of the crop. by virtue of the chattel mortgage. The crop was ready for harvest before October 20, 1919, when the defendant claims the. lease expired. The question of abandonment of the premises and crop by plaintiff was contested upon the trial, and the jury found in favor of plaintiff. A chattel mortgage does not transfer title to the mortgaged property in this state, but is only a lien: *Ayre* v. *Hixson,* 53 Or. 19 (98 Pac. 515, 133 Am. St. Rep. 819, Ann. Cas. 1913E, 659). Under the circumstances of this case, after taking possession of the crop it was incumbent upon defendant to foreclose her chattel mortgage in the manner provided by Section 10184, Or. L. This she did not do.

11. The defendant, when she accepted the chattel mortgage bound herself to foreclose in a lawful manner just as strictly as the plaintiff, mortgagor, bound himself to keep the covenants of the mortgage. Possession may be taken only in the manner provided by the terms of the mortgage itself or as provided by

law, and not otherwise. Taking and retaining possession of mortgaged chattels in any other method is a trespass which the mortgagor may waive and sue the mortgagee for a conversion: *Swank* v. *Elwert,* 55 Or. 487, 496 (105 Pac. 901); *Springer* v. *Jenkins,* 47 Or. 502 (84 Pac. 479).

When the mortgagee of chattels after condition broken secures possession of the mortgaged property the mortgagor's title is not extinguished, but continues until the lien is foreclosed strictly according to the terms of the mortgage or in the manner provided by law: *Backhaus* v. *Buells,* 43 Or. 558 (72 Pac. 796, 73 Pac. 342). By reason of this general right of property, although the mortgagee of chattels is lawfully in possession, and has irregularly foreclosed the mortgage and has sold the property to another, the mortgagor may treat the transaction as a conversion of the property and sue accordingly: *Springer* v. *Jenkins,* 47 Or. 502 (84 Pac. 479). See Sections 10183, 10184, Or. L.

12. A conversion of a part of a chattel is a conversion of the whole when the circumstances evince a purpose to control or dispose of the whole of it: 38 Cyc. 2019.

13. The general rule for the measure of damages in an action by a mortgagor against a mortgagee for a conversion of the mortgaged property is the difference between the market value of the property at the time of the conversion and the amount of the mortgage debt: *Springer* v. *Jenkins,* 47 Or. 502 (84 Pac. 479); *Swank* v. *Elwert,* 55 Or. 501 (105 Pac. 901). This rule, which is supported by an abundance of authority, the trial court applied in the present case and permitted the plaintiff to recover the value

of the chattels converted after deducting the amount of the chattel mortgage debt due to defendant.

14. The testimony submitted on behalf of plaintiff, although disputed by defendant, was sufficient to take the case to the jury, and there was no error in denying the motion for a nonsuit and the motion for a directed verdict.

15. Over the objection and exception of defendant the court correctly instructed the jury in accordance with the law above referred to. The court further charged the jury as follows:

"Before I proceed, I might state in reference to the employment of this Mr. Gibbons that upon entering the premises to carry out the services for which he was hired by Mrs. Green he became in duty bound to exercise care in the same manner as good husbandry would require in such cases to dig the potatoes and to save the crop."

Defendant predicates error upon the failure of the court to instruct the jury that "the burden of proof to establish his case is upon the plaintiff." The court fairly submitted to the jury the issues raised. A portion of plaintiff's case was set forth in defendant's answer and it was not error to refuse to require plaintiff to bear the burden of proving facts admitted by defendant. Exceptions were taken by defendant to all of the instructions.

16. After a careful examination of the record we find no prejudicial error therein. The main question in controversy in regard to the harvesting of the crop of potatoes was peculiarly for the jury. Two verdicts have been rendered favorable to plaintiff.

The judgment of the trial court is affirmed.

AFFIRMED. REHEARING DENIED.