GWYNNE (HARMER v.). See Case No. 6,075.

GWYNNE (UNITED STATES v.). See Case No. 15,272.

# H.

## Case No. 5,883.

### In re HAAKE.

[2 Sawy. 231;[1] 7 N. B. R. 61.]

District Court, D. California. June 29, 1872.

BANKRUPTCY — INTEREST ACCRUING AFTER ADJUDICATION—SECURED CREDITORS—TITLE OF MORTGAGEE OF A CHATTEL—HOMESTEAD LAW AS AFFECTING RIGHTS OF CESTUI QUE TRUST UNDER A TRUST DEED TO SECURE ADVANCES.

1. Interest accruing subsequently to the time of adjudication is not proveable in bankruptcy.

[Distinguished in Re Town, Case No. 14,112.]

2. But a secured creditor will be allowed to apply the proceeds of his security to the satisfaction of the principal and interest of his debt until paid, when so stipulated in his contract.

[Cited in Phelps v. Sellick, Case No. 11,079.]

3. The title of a mortgagee of a chattel becomes absolute after condition broken. If he takes possession and omits to sell or foreclose within a reasonable time, the debt is satisfied to the extent of the value of the chattel, when taken possession of.

[Cited in Lee v. Fox, 113 Ind. 102, 14 N. E. 891; Whittemore v. Fisher, 132 Ill. 257, 24 N. E. 640.]

4. The cestui que trust under a trust deed to secure present loans and subsequent advances, will be protected as to such advances against the claims of the borrower who has declared the land a homestead, and has subsequently obtained such advances, and fraudulently concealed his declaration of homestead.

---

[1] [Reported by L. S. B. Sawyer, Esq., and here reprinted by permission.]

[In bankruptcy. In the matter of J. C. Haake.]

Cowles & Brown, for petitioners.

R. Thompson and L. J. Bachelder, for bankrupt.

HOFFMAN, District Judge. At various times during the years 1868 and 1869, the bankrupt obtained from the savings and loan society, a corporation organized under the laws of this state, loans of money, amounting in the aggregate to about $30,000. The notes given for these advances were payable in installments, and bore interest at the rate of one and one half per cent. per month, payable monthly in advance. And it was stipulated that in case default should be made in the payment of any of the installments of principal or interest, the whole amount unpaid of principal and interest should thereupon, at the option of the lender, become due, and should thereafter bear interest at the rate of two per cent. per month, compounding monthly until paid.

At the time of obtaining these loans, the bankrupt executed unto E. W. Burr and Benjamin D. Dean two deeds of certain premises in this city, in trust to secure to the savings and loan society the payment of the moneys loaned by it, with the interest thereon, and of all sums expended by it for insurance, repairs, etc., of the mortgaged premises, and for taxes, liens, or incumbrances

thereon. As a further security for one of the notes (that for $20,000), the bankrupt executed to E. W. Burr a bill of sale, intended as a mortgage, for the schooner Alice Haake, which bill of sale was duly recorded in the custom-house.

On the fourteenth day of February, 1871, Haake was duly adjudicated a bankrupt, and on the fifteenth of March of the same year, Henry C. Hyde was appointed assignee. On the twenty-sixth of March, 1872, the savings and loan society filed their petition in this court, praying that the trustees named in the deeds of trust might be permitted to sell the premises therein mentioned, in accordance with the stipulations therein contained, to satisfy the indebtedness of the bankrupt to the society.

This application is resisted by the bankrupt on the ground that the amount due the society is greatly overstated, and that he is willing and able to pay the amount justly due on the notes, for the payment of which one of the lots is mortgaged. It is also resisted on the part of one Ohme, who claims to be the owner of the other lot, under a conveyance from the bankrupt subsequent to the deed of trust, and who professes to be willing to pay to the society the amount justly due of any indebtedness of the bankrupt secured upon the lot.

A reference to the register was thereupon ordered, to ascertain and report the amounts due the petitioners, for the payment of which they are entitled to a lien on either or both of the lots in question. The register having made his report, the various questions presented were argued by counsel, and submitted to the court for decision.

1. In computing the amount of indebtedness for which the creditors may now claim a lien on the mortgaged premises, the first question to be determined is, up to what date shall interest be allowed? This question, at all times important, is peculiarly so in this case, for the society, availing itself of the stipulations contained in the contracts, on the fourteenth of June, 1870, declared the principal and interest then unpaid to be due and payable, and has, from that date, charged interest on the amount thus declared to be due, at the rate of two per cent. per month, compounded monthly.

The question presented, however, is to be determined on considerations applicable to all debts bearing interest, provable against a bankrupt's estate, and without reference to the terms and conditions of these contracts, which, harsh and oppressive as they may be, are, under the laws of this state, legal and enforceable. By the nineteenth section of the bankrupt act [of 1867 (14 Stat. 525)], "all debts due and payable from the bankrupt, at the time of the adjudication," may be proved against his estate. It is obvious that interest which accrues subsequently is not a debt due and payable at the time of the adjudication.

Debts which do not bear interest, and which, though existing at the time of the adjudication are payable at a future day are also by the same section allowed to be proved, but subject to a rebate of interest for the period between the time of the adjudication and the date of their maturity. By these provisions, both classes of creditors are put on an equal footing, and the intention of the act to establish the date of the adjudication as the time at which the liability is to be ascertained and determined, is made manifest. I have met with but one case in which these provisions of the act have received a judicial construction. In re Orne [Case No. 10,581].

In that case Mr. Justice Blatchford says: "If the debt is one, not only in existence at the time of the adjudication, but payable before that time, and running with interest by its terms and character, the statute intends that the debt shall be proved for the amount of the principal and interest thereon to the time of the adjudication in bankruptcy."

By the Massachusetts insolvent law, from which the provisions of the bankrupt act were in great part derived, provable debts were those due and payable at the time of the first publication of notice (section 25), and interest was computed up to that time. Subsequently accruing interest could only be paid out of any surplus remaining after satisfying all the debts so proved. Brown v. Lamb, 6 Metc. (Mass.) 210, 211.

Under the New York insolvent law, a similar rule prevailed. Interest was computed up to the date of the assignment. Further interest was allowed only after paying the principal and interest thus computed. Ex parte Murray, 6 Paige, 204.

The rule in New Jersey was the same. Prichett v. Newbold Saxton [1 N. J. Eq.] 571.

In England the rule that interest stops at the date of the fiat or commission is recognized by all the text writers, and established by numerous decisions. "Under the English bankruptcy laws," says Mr. Robson, "interest was not allowed to be computed in any case of an insolvent estate after the commission" (Robs. Bankr. p. 106; Bromley v. Goodere, 1 Atk. 79; Ex parte Badger, 4 Ves. 165); and interest will not be allowed to a separate creditor of a partner, even out of the surplus of the separate estate, until the joint creditors have been paid in full (Ex parte Minchin, 2 Glyn & J. 287; Ex parte Clarke, 4 Ves. 677).

The reason of the rule is stated in Ex parte Bennet, 2 Atk. 527, as follows: "Commissioners, after a man becomes bankrupt, compute interest on debts no lower than the date of the commission, because it is a dead fund, and in such a shipwreck if there is a salvage of part to each person in the general loss it is as much as can be expected."

It may also be observed that where, as in England and in most of the United States, in-

terest is regulated by law, and all the debts of the bankrupt bear the same, or nearly the same, rate of interest, it is immaterial to the creditor at what time interest stops upon his debts, provided interest on all the debts stops simultaneously with his own. For his proportionate share of the assets will be the same whatever period be fixed for the stoppage on all the debts. There can be no doubt, therefore, that interest on provable debts cannot be computed as against the general assets beyond the date of the adjudication.

But the question in the present case is, how far does this rule apply to a creditor who holds property of the bankrupt as security for the debt due him, and which, by the terms of his contract he is authorized to appropriate to the satisfaction of the debt, with interest thereon until payment. On this point, I have found no decision under the bankrupt act of the United States.

The rule in England, as to the stoppage of interest at the time of adjudication, applies, says Mr. Robson, to mortgagees who come to the court for assistance, but if the mortgagee relies on his security, the trustee cannot redeem without paying all the interest then due. Robs. Bankr. 253; Ex parte Kensington, 2 Mont. & A. 302, 304.

But this rule is sometimes relaxed. Thus, where the sale of the mortgaged property was delayed at the instance of the assignee, the proceeds were applied first to the payment of the interest accrued after the bankruptcy. Ex parte Kensington, 2 Mont. & A. 301; Ex parte Ramsbottom, Id. 79. In a similar case, where the mortgage was disputed, and the property had been sold pending the litigation, and its proceeds invested by the assignee, the mortgagee was allowed the interest which had accrued on the fund. Ex parte Pollard, 1 Mont. D. & D. 264. And an equitable mortgagee, although he cannot prove for interest subsequent to the order of adjudication, may nevertheless apply rents or income derived from the security towards the payment of subsequent interest. Ex parte Ramsbottom, 2 Mont. & A. 79; Ex parte Rufold, 4 Doct. & Stud. 282.

It seems also that in England, where a party has a security covering debts in general, some of which are provable, and some not, the security may be applied in payment of the debts not provable. Ex parte Kensington, 2 Mont. & A. 300. Thus, where a party having a lien on certain merchandise delayed, at the instance of the assignee, a sale of it, by means of which a greatly enhanced price was realized, he was allowed to apply the proceeds first to the payment of interest which had accrued since the fiat. In that case, Sir John Rose observed: "The petitioners may be considered as having a security for a debt part of which, viz.: principal and interest before the fiat, is provable, and part, viz.: interest since the fiat. is not provable, and he applies the security to the part not provable.

There is nothing in the order now made which disturbs the general rule, that interest stops at the bankruptcy. The circumstances of this case take it out of that rule." Ex parte Kensington, 2 Mont. & A. 304. Whether under the recent English act of 1869, interest upon debts secured by mortgage or otherwise stops at the date of adjudication, I have nowhere seen decided.

By the 78th general rule, the court is required, on the application of the mortgagee, "to take an account of the principal, interest and costs due upon such 'mortgage,' etc., and upon a sale of the property, to apply the proceeds, after payment of the costs, etc., of sale, to the satisfaction of what shall be found due to such mortgagee for principal, interest and costs, and in case the proceeds shall be found insufficient, the creditor may prove for the deficiency." By the twelfth section of the act, no creditor to whom the bankrupt is indebted, in respect to a debt provable in bankruptcy, allowed to have any remedy against the property or person of the bankrupt except in the manner directed by the act. "But this section shall not affect the power of any creditor holding a security upon the property of the bankrupt to realize, or otherwise deal with such security in the same manner as he would have been entitled to deal with the same if this section had not been passed."

It is not clear that under these provisions a creditor holding a mortgage to secure the principal of a debt, with interest until paid, may not realize upon his security the whole amount due by its terms. Nor under the general rule above cited is it certain that the court, when taking an account of the principal, interest and costs due upon such mortgage, would be justified in excluding from this account all interest which, though due upon the mortgage, has accrued since the fiat.

Under the United States bankrupt act all valid liens and securities are protected. The twentieth section provides various modes of dealing with secured debts. The creditor may prove for the balance of the debt, after deducting the value of the security to be ascertained by agreement or sale. Or, he may release his security and prove for his whole debt, or he may pay to the assignee the excess in value of the property over and above the sum for which it is held as security, and the assignee may release the bankrupt's equity of redemption, or the property may be sold subject to the claim of the creditor thereon.

I have been unable to find a single decision to the effect that "the sum for which the property is held as security" is to be taken to be the amount of the principal, with interest only up to the date of adjudication. The entire absence of any authority on the subject justifies the presumption that the claim of the creditor to a full satisfaction of his debt, according to the terms of his contract out

of the secured property has been generally admitted.

It is not supposed that any different degree of protection was intended to be afforded to the secured creditor by the adoption of either of the modes of proceeding authorized by the act; and yet, if the amount of the debt for which the property is held as security is taken to be only the principal and interest up to the adjudication, the creditor would lose an advantage which, if the assignee elects to sell the property subject to his claim, he would gain. For the purchaser at such sale could not, I presume, in a foreclosure suit brought by the creditor, call upon the state court to disallow interest after the date of the adjudication, and thus pro tanto refuse to enforce the contract. I have, moreover, not been able to perceive upon what ground a distinction is drawn as stated by Robson, between a trustee seeking to redeem, and a mortgagee who comes to the court for assistance. It would seem that the rights of the mortgagee ought not to depend upon the form of proceeding adopted for their enforcement or ascertainment.

But, if there be anything in this distinction, it is to be observed that the trustees, or cestui que trust, in this case are not asking the assistance of the court. They are asking merely its permission to exercise a right conferred by the power of sale contained in the trust deed. A right which it would seem they would possess under the English bankrupt act (section 12, above cited), but which they probably cannot exercise under our law except on application to the court. In re Davis [Case No. 3,618]; In re Frizelle [Id. 5,133].

With regard, however, to one of the lots conveyed in trust by the bankrupt, no such application is necessary, for he had parted with his equity of redemption before the bankruptcy, and no interest whatever passed to assignee. As between the purchaser and the secured creditor, the latter is of course entitled to the full benefit of his security, as if no bankruptcy had occurred. But with respect to the other lot, and as between creditor and the assignee, I also think the former is entitled to the like benefit, and the assignee has no other rights than such as he could assert in a bill to redeem.

2. In addition to the security given by the deeds of trust the bankrupt also executed, as has been stated, a bill of sale, intended as a mortgage, of the schooner Alice Haake. The bill is dated March 11, 1869. At some time between February and the end of June, 1870, the mortgagee, learning that the bankrupt had pledged the earnings of the vessel, took possession of her, and from that time until March, 1872, when she was sold by order of this court, she remained under his exclusive management and control. He dispatched her on such voyages as he saw fit, furnished her outfit, paid the wages of captain and crew, and collected freights. He also, on one occasion, paid for repairing damages she had accidentally sustained. The business proved unprofitable—her expenses being largely in excess of her earnings, not, however, through any want of skill and diligence on the part of Mr. Burr. In the spring of 1871 she was laid up, and remained unemployed until sold in March, 1872, for a sum considerably less than her value when the mortgagee took possession. It does not appear that the bankrupt protested against these proceedings on the part of the mortgagee, or that he made any formal demand that the vessel should be sold. But there is no evidence of any agreement on his part that she should be run at his risk. In fact, he does not appear to have been consulted on the subject, or treated as having any rights in the matter, except that the mortgagee directed the master to procure at the bankrupt's store, such supplies as he could furnish. In the accounts now presented, the excess of expenses over and above the earnings of the vessel, are charged to the bankrupt with interest, at the rate of two per cent. per month, and he is credited only with the balance of her proceeds, after deducting these amounts. This balance is credited on the $20,000 note, to secure which the mortgage on the vessel was given. The remainder, it is claimed, is a charge upon the premises conveyed by the deeds of trust.

I am unable to perceive by what right the mortgagee, in the absence of an express agreement to that effect, can charge to the bankrupt the debts contracted by himself in running the vessel. He was her legal owner in the exclusive management and control. The debts were his own, contracted by himself, without authority of the bankrupt. If he chose not to sell the vessel on reasonable notice to the mortgagor, as he should have done, but elected to employ her in the freighting business, he did so at his own charges and risk, and the debts he incurred were his own debts, in no way chargeable to the bankrupt, at any rate of interest, still less at the exorbitant rate now claimed. But this point is immaterial, for I think it clear that the taking possession of the vessel by the mortgagee, and his omission to sell her within a reasonable time, operated a satisfaction of the debt to the extent of her value when the mortgagee took possession. It is well settled that a mortgagee of personal property upon the failure of the mortgagor to perform the condition of the mortgage acquires an absolute title to the property. Langdon v. Buel, 9 Wend. 80; Fuller v. Acker, 1 Hill, 473; 12 Wend. 61. The mortgagor, however, has an equity of redemption which chancery will protect unless it has been foreclosed by judicial proceedings or by a public sale after notice. 3 Denio, 33. But taking possession of the chattel after failure to perform the condition of the mortgage is a satisfaction of the debt if the chattel be of sufficient value. If on a fair sale it brings less the bal-

ance may be demanded of the mortgagee. Case v. Boughton, 11 Wend. 107. And a plea that on the sale of a chattel the vendor took a mortgage of it, and on the mortgage becoming forfeited took possession of the chattel to dispose of it, and that he might have disposed of it, and out of the avails retained the amount due, was held a good answer to a suit to recover the price of the chattel. But independently of the authorities it would seem plain that the mortgagee of a perishable chattel like a ship or a horse, can have no right to retain it for an indefinite period after condition broken, and when the property has diminished in value by use or age sell it and demand of the mortgagor payment of the deficiency. The value of the vessel at the time the mortgagee took possession appears to have been about $20,000. I think the bankrupt is entitled to a credit for that amount from June 14, 1870, when the mortgage debt was declared due.

3. The trust deeds given by the bankrupt were for the security of moneys then loaned to him and for future advances. After executing the deeds the bankrupt declared a homestead on one of the lots conveyed him in trust. He subsequently obtained further advances without disclosing the fact that he had declared a homestead on the premises. He now claims that his homestead should be protected against any charge under the trust deeds for advances subsequent to its declaration. It is unnecessary to inquire whether a person who has conveyed the legal title of his land to a trustee as security for a debt has any estate on which, under the laws of this state, a homestead can be declared, for it is clear that as against the trustee or cestui que trust the attempted fraud of the bankrupt cannot succeed. The validity of a mortgage to secure future advances is indisputable, and the mortgagee will be protected in making such advances as have been made without notice of an intervening security.

In some of the states the registry of the second mortgage is deemed full notice to the first mortgagee. 17 Ohio, 371; 2 Barr [2 Pa. St.] 96; 9 Barr [9 Pa. St.] 86. But the American courts generally, and the English courts uniformly, hold that nothing short of actual notice will suffice. "It must be," says Mr. Chief Justice Marshall, "actual notice brought home to the party." Shirrass v. Craig, 7 Cranch [11 U. S.] 34; Truscott v. King, 6 Barb. 346; Stuyvesant v. Hall, 2 Barb. Ch. 159. And see [Article on "Mortgages"] 2 Am. Law Reg. U. S. 19 et seq.

If, then, the question were presented as between the cestui que trust under the trust deed and a subsequent incumbrancer the former would be protected for any advances made without notice of the intervening incumbrance. The mortgagor who has declared a homestead, and fraudulently obtains further advances, cannot stand in a better position than an intervening incumbrancer.

An order of reference to the register must be entered to compute the amount due the petitioners on the principles declared in this opinion. On the ascertainment of the amount the premises will be ordered to be sold and the proceeds applied to the satisfaction of the debt due to the petitioners.