Argued December 18, 1924, reversed February 24, 1925.

## L. O. MILLS v. D. O. WILLIAMS.

(233 Pac. 542.)

**Fraud—Clear and Convincing Evidence Necessary.**

1. Fraud must be established by clear and convincing evidence.

**Partnership—Defendant Partner's Conduct in Taking Over Active Management of Partnership Ranch Held Conversion of Plaintiff's Interest and Dissolution of Firm.**

2. Defendant partner's conduct in taking over active management of ranch and practically ousting plaintiff from further participation in partnership business, and thereafter holding it without selling it or foreclosing his chattel mortgage on plaintiff's interest, *held* conversion of plaintiff's interest and dissolution of firm.

**Partnership—Defendant Held Liable to Plaintiff Partner for Value of One-half Partnership Property as of Time of Conversion.**

3. Where action of defendant in taking over partnership property amounted to conversion of plaintiff's interest and dissolution of firm, defendant became liable to plaintiff for one-half value of firm property as of time of conversion.

---

See (1) 27 C. J. 63. (2) 30 Cyc. 655. (3) 30 Cyc. 446 (1926 Anno.).

From Klamath: D. V. KUYKENDALL, Judge.

Department 2.

This is a suit instituted to cancel a deed, note, chattel mortgage, to prevent recordation of deed and

---

1. Sufficiency of proof of fraud, see notes in 65 **Am. Dec.** 157; **Ann. Cas.** 1912A, 711. See, also, 12 **R. C. L.** 436; 20 **R. C. L.** 957.

2. Misconduct of partners as ground for dissolution, see note in 4 **Ann. Cas.** 460. See, also, 20 **R. C. L.** 956.

transfer of note and mortgage during pendency of suit and for damages. The suit grew out of differences arising from a partnership between the parties. In June, 1918, the parties agreed to form a partnership to engage in raising and marketing cattle. By the terms of the partnership agreement, plaintiff conveyed to defendant by quitclaim deed an undivided one-half interest in a tract of land then possessed by the plaintiff, and which he held under contract of purchase from the United States government. By the terms of the partnership agreement, the parties were to contribute equally to the purchase price of said land and the title to that land, and all other tracts of land thereafter purchased for use in the partnership business, should be held for the benefit of said partnership. The defendant agreed to furnish the necessary capital to finance said business. Plaintiff agreed to execute and deliver to defendant his promissory note secured by chattel mortgage on his interest in the livestock for one half of the money so advanced by defendant. The partnership agreement was thereafter reduced to writing and dated January 25, 1919. The parts of the agreement relevant to this suit are as follows:

"Witnesseth—That in consideration of the mutual interests and profits to be derived therefrom, the said parties hereby form and enter into a partnership under the firm name and style of Yamsay Ranch, to continue after the date hereof until dissolved as hereinafter provided.

"Either party may retire from the partnership on giving not less than sixty days notice to the other partner of his intention so to do. * *

"The capital of the partnership shall be contributed by the said partners as follows: The said Dayton O. Williams has advanced and will be called

113 Or.—34

upon to advance necessary sums to be invested in said partnership business, and has furnished and will furnish certain stock cattle to be used in said business, and the said Lyle O. Mills agrees to make, execute and deliver to said Dayton O. Williams, his promissory note in writing, for one-half of all such cash sums advanced, and for an amount equal to one-half of the purchase price or value of the livestock furnished and delivered at the rate of seven per cent per annum from date of their execution, and in order to secure the payment of said notes, the said Lyle O. Mills agrees to and binds himself to make, execute and deliver chattel mortgages for the amount of said notes to the said Dayton O. Williams, which chattel mortgages are to cover his interest in the said livestock as a partner.

"And it is further understood and agreed that both parties to these articles, will, as soon as patent has been secured for certain lands now under contract of purchase, which lands are to be used by the partnership for grazing purposes, make, execute and record for all of said lands, such deeds to go to the partnership; the value of said lands to be determined by their purchase price; and each partner to receive credit upon the books of the partnership for such amounts, as a contribution to the capital stock of said partnership business, and each hereby agrees with the other that he will so deed all of the lands which he secures for this purpose, to said partnership.

"It is understood by and between the parties hereto that the said Dayton O. Williams has already advanced to said partnership the sum of twenty-five hundred dollars ($2,500.00), and that he is to advance the further sum of sixty-five hundred dollars ($6,500.00), and also advance other and necessary sums to put the said business upon a business footing, and also that he has, at the date of the execution of this contract, delivered about two hundred head of calves for the use of said business, the value of said calves to be determined between the parties hereto, and that he will, and agrees to, from time

to time, turn over additional stock to be used in said partnership business, and at the time of the delivery of said stock, their value is to be determined and notes given for the one-half interest of the said Lyle O. Mills, as hereinabove agreed.

"The said Lyle O. Mills hereby agrees to give his entire time and attention to the management and handling of said business, and as an item of expense, the salary of the said Lyle O. Mills, the same being —— dollars per month, is to be charged in the expense account of running said business, and is to be paid him as any other item of expense, and is to be paid prior to a division of any profits of said partnership.

"All moneys which shall from time to time be received from or on account of said partnership, shall be deposited in a bank in the name of the partnership, such bank to be agreed upon by the partners, and all disbursements for and on account of such partnership shall be made by partnership check on said bank. * *

"Neither partner shall buy, order or contract for any article in the name of the partnership exceeding the value of $ —— without the previous consent of the other partner, and in case he does so, the other partner shall have the option of refusing to accept the same on behalf of the partnership, and it shall be paid for out of the funds of the partner ordering the same, and be charged to his individual account. * *

"Neither partner shall, without the consent of the other partner, compound, release or discharge any debt or account which shall be due to the partnership, without receiving the full amount therefor. * *

"In the books of accounts to be kept by the said firm, entries are to be made therein of all business matters and transactions that are usually entered in books of account, and such books, accounts, and all letters, papers, documents and records belonging to the partnership, shall be kept at the headquarters of the partnership, and each partner shall, at all

times, have free access to and the right to examine the same, and both parties hereby bind themselves to enter in said books a true and accurate account of all moneys received by each of them on account of said partnership, and a true and accurate account of all moneys paid out or expended by each of them on account of said partnership.

"If any differences shall arise between the partners as to their rights or liabilities under these articles of copartnership, each partner shall select a representative, and the representatives so selected shall have the power to select a third representative, and all such disputes shall be arbitrated by the three representatives, and their decision shall be final and binding upon both partners hereto, and each partner agrees with the other that he will accept the decision of such board of arbitration as to the matter in dispute.

"Upon the dissolution of this partnership, a full, true and accurate account of the assets and liabilities, and the transactions, and the business of the partnership shall be made, and after the payment of all partnership debts and amounts due to either of the partners, the balance remaining shall be divided equally, and if the partners shall be unable to agree upon a valuation of the property of said partnership, the matter shall be referred to a board of arbitrators selected as above provided for.

"In case either partner shall, upon the dissolution of said partnership, be desirous of purchasing the interests of the other partner, he shall have the right to do so, and in case they are unable to agree upon the value of said interest, the question shall be determined by the board of arbitrators selected as above provided for, and both partners agree that the decision of said board shall be binding upon each of them as to such valuation.

"In case notice of dissolution of this partnership is given by one partner to the other, as herein provided, the other partner shall have the right to purchase the business and the retiring partner's interest, the value of which is to be determined as herein

provided, in case of disagreement. It is not intended by these articles to make it compulsory that such interest shall be taken by the other partner, and in case the other partner decides not to purchase the entire interest, the business of the firm is to be closed up and the property sold after the expiration of the time provided for for notice of dissolution, and after the payment of all debts and liabilities of the partnership, an equal division of the proceeds is to be made."

The agreement further provides that the parties should share equally in the profits and losses.

About December 15, 1919, defendant being dissatisfied with the management of the business by plaintiff assumed active control and management thereof. After that date, plaintiff took no part in conducting the business of the firm. On June 22, 1920, plaintiff filed his complaint in this suit. On February 19, 1921, defendant filed his answer to which plaintiff filed his reply, April 13, 1921. On October 15, 1921, after this suit was instituted, plaintiff filed a supplemental complaint alleging damages caused by depasturing the land, claimed by him during 1920, with the livestock formerly belonging to the partnership and then under the control of defendant. To this supplemental complaint defendant filed his answer, according to the abstract of record, July 11, 1921. On October 14, 1921, plaintiff filed a motion for leave to file another supplemental complaint based upon damages resulting from depasturing the same land with the same cattle during 1921, which motion was denied.

The contention of the plaintiff is: That the defendant fraudulently, untruthfully and wrongfully represented to plaintiff that he was able to, and would finance said partnership in the sum of $50,000;

that said sum should be repaid to defendant from the profits of the business; that defendant did not have the required capital, but borrowed it from banks on short loans; that defendant breached said partnership agreement by hypothecating the note given to him by defendant for the latter's half interest in said livestock resulting in a demand on the plaintiff for the payment of said note long before it was possible to earn the same from the partnership adventure; that the alleged fraudulent representations were relied upon by the plaintiff, who was induced thereby to execute and deliver said deed to defendant; that by reason of said representations being false and defendant's conduct thereafter, the consideration for said conveyance has failed; that the defendant further breached said partnership agreement by ousting plaintiff from the control and management of said partnership livestock, by taking sole possession thereof and thereafter dealing with it as his sole individual property as mortgagee without selling it under the mortgage, or foreclosing said mortgage; that by so dealing with said personal property and depriving plaintiff of control over it, the defendant should be estopped from claiming anything from plaintiff on account of said note and mortgage, and that defendant should compensate plaintiff for the use of the land described in said conveyance after December 15, 1919, and for hay furnished by plaintiff for feeding said cattle, which was fed to said cattle by defendant after said date.

The contention of the defendant is that plaintiff did not devote all of his time to said partnership affairs as he agreed to do; that he was negligent and inefficient to such a degree that defendant was compelled to interpose in order to prevent great loss;

that defendant took possession of said personal property as a partner and conducted the business thereafter for the benefit of the partnership and not otherwise, and that said partnership should be dissolved and an accounting had.

The pleadings are very prolix, but the foregoing fairly represents the contentions.

On the second day of January, 1922, the court filed its findings of fact, conclusions and decree. The findings are as follows:

"That the parties hereto, on or about January 25, 1919, entered into a written agreement of copartnership, such agreement being set forth in the pleadings in this cause; that such relation between the parties continued until December 31, 1919; that upon said date said copartnership was dissolved by acts of the parties.

"That on March 18, 1919, plaintiff made, executed and delivered to defendant his promissory note in the sum of $14,131.58, bearing interest at the rate of eight per cent per annum; that upon December 31, 1919, plaintiff was indebted to defendant on said note in the sum of $2,133.79; that said sum remains unpaid; that no interest should be allowed on this sum to date of decree.

"That the parties hereto are the owners, each of an undivided one-half interest, of the following described lands:

"Northeast quarter; North half of Northwest quarter; Southeast quarter of the Northwest quarter of section five, Northeast quarter of section eight; West one-half of Southwest quarter of section four; West one-half of Northwest quarter of section nine, all in township 33 South range 11, E. W. M. Klamath County, Oregon.

"That defendant D. O. Williams is the owner and entitled to the immediate possession of all the personal property acquired by said copartnership, consisting of money, accounts, cattle, horses, machinery, tools, equipment and livestock brand.

"That each party pay his own costs incurred in this suit."

The conclusions follow the findings and the decree accords with the conclusion.

The questions raised by the appeal require a consideration of the entire case, both in fact and as to the law. We do not have the benefit of the reasons for the decision of the learned Circuit Judge, who tried the case. Other facts, necessary to understand the issues joined and the reasons for our decision, will be stated in the opinion.

REVERSED.

For appellant there was a brief over the names of *Mr. F. H. Mills* and *Messrs. O'Neill & Irwin,* with oral arguments by *Mr. C. M. O'Neill* and *Mr. John Irwin.*

For respondent there was a brief over the names of *Mr. C. F. Stone, Mr. Fred D. Fletcher* and *Mr. R. C. Grosbeck,* with an oral argument by *Mr. Stone.*

COSHOW, J.—1. The allegations in the complaint charging fraud to the defendant are not sustained by the evidence. Fraud is never presumed, but must be established by clear and convincing evidence. The plaintiff alleged fraud and had the burden of proof to establish it. In our opinion, the evidence is not sufficient to establish any fraudulent intention on the part of the defendant in either his representations or conduct in entering into the partnership relation with the plaintiff. It follows that plaintiff is not entitled to a decree canceling the quitclaim deed.

2. The Circuit Court found that the partnership was dissolved December 15, 1919. This finding was doubtless based upon the conduct of the parties. In

this finding we concur. We believe the evidence justifies the finding that the conduct of the defendant in taking over active management of the partnership affairs and practically ousting the plaintiff from further participation in the partnership business amounted to a dissolution of the partnership in view of the conduct of the plaintiff thereafter. The complaint is based upon that theory of the case. Plaintiff complains in his reply brief because the court did not order a sale of the property belonging to the partnership December 15, 1919, and decree an accounting of the partnership affairs. In this contention the plaintiff is taking a position inconsistent with the theory on which he framed his complaint and presented his case. We believe that the plaintiff has no just ground for complaint, because the court found that the partnership was dissolved December 15, 1919, and that the defendant was the owner of the personal property thereafter. Defendant's conduct was a conversion of plaintiff's interest in the personal property.

The defendant held the promissory note for $14,131.58. This note was secured by a chattel mortgage covering all of the interest of the plaintiff in and to the cattle belonging to the partnership described as follows:

"About 350 head of stock cattle, together with all the offspring and increase from and of said cattle, the same being branded 'Y' on the left side."

The promissory note was payable on demand and was dated March 18, 1919. It was, therefore, past due December 15, 1919, and the defendant, by its terms and by the terms of the chattel mortgage, was lawfully entitled to take possession of the property.

The defendant denies that he took possession of

the property by virtue of the chattel mortgage, and insists that he simply exercised the right of a partner to participate in the management of the partnership affairs. The Circuit Court, however, found against him and we believe rightly. The partnership agreement prescribed that the plaintiff should devote all of his time to the partnership affairs. No such requirement, on the part of the defendant, is to be found in the partnership agreement. Both parties agreed that they contemplated that it would require at least ten years to build up the herd and to place the business on a profit-producing basis. Both parties testified that the defendant agreed to finance the partnership. The only disagreement in the record is regarding the amount of money it would require to do that.

The defendant contends that after December 15, 1919, he conducted the business in the interest of the partnership. All of his acts and his entire conduct show that he conducted the business in his individual name. This manner of doing business was in direct conflict with the articles of copartnership. He undertakes to explain his conduct in receiving checks payable for partnership property, which he sold in his own name, and in paying all alleged partnership obligations by checks on his private account. Some of the checks so received by defendant were written by himself. He testified that it was more convenient to transact the business in that way. The reasons assigned by him are not convincing. He testified that the check-book used by the partnership was a large one and could not be conveniently carried with him; that he was traveling a great deal and that it was more convenient to use a small check-book. No reason is given, however, why he could not

have used a small check-book in drawing on the partnership account. The conduct of the defendant entirely overcomes his testimony to the effect that he was conducting the business after December 15, 1919, as partnership business. By taking possession of the partnership property and thereafter holding it without selling it or foreclosing the chattel mortgage, he converted the partnership property to his own use.

Mr. Justice BEAN, in *Laam* v. *Green,* 106 Or. 311, 321 (211 Pac. 791), states the rule of law, where the mortgage of personal property has converted it to his own use, as follows:

"The general rule for the measure of damages in an action by a mortgagor against a mortgagee for a conversion of the mortgaged property is the difference between the market value of the property at the time of the conversion and the amount of the mortgage debt: *Springer* v. *Jenkins,* 47 Or. 502 (84 Pac. 479); *Swank* v. *Elwert,* 55 Or. 501 (105 Pac. 901).

*Lomax* v. *Walk,* 33 Or. 385, 386 (54 Pac. 199), is a case very similar to the case at bar. It was a suit between partners for the dissolution of a partnership and for an accounting.

The plaintiff, Lomax, mortgaged his interest in the partnership property to his partner the defendant Walk.

"The mortgage provides that if the defendant 'at any time deemed himself insecure,' it shall be lawful for him to take possession of the property therein described, 'and the same to sell and dispose of at public or private sale, as he may see fit, and out of the proceeds arising from such sale to retain and pay' the amount due on such promissory note."

The defendant Walk, deeming himself insecure, took possession of the property but before the note, which it was given to secure, matured. He held the

property about nine months after the maturity of the note, and then proceeded to advertise and sell the mortgaged property at public sale as provided in the mortgage. On page 387, the court, speaking through Mr. Justice R. S. Bean, said:

"The validity of the mortgage, and the right of the defendant to take possession of the mortgaged property before the maturity of the note, are conceded by the plaintiff. His sole contention is that defendant, having exercised the right given him, and taken possession of the property, ought to have sold and disposed of it within a reasonable time thereafter, and, not having done so, he must account for its value at the time of the taking. The rule upon this subject, as gathered from the authorities, seems to be that a mortgagee of personal property of a perishable nature, or the value of which is liable to fluctuate in the market, who takes possession under the terms of his mortgage, must sell and dispose of the property in the manner authorized by law for a foreclosure of such mortgage within a reasonable time thereafter, or he will be liable for its value at the time he took it into his possession. Jones on Chattel Mortgages, § 773; 2 Cobbey on Chattel Mortgages, § 988; *In re Haake*, 2 Sawy. 231, Fed. Cas. No. 5883; *Lee* v. *Fox*, 113 Ind. 98 (14 N. E. 889); *Waite* v. *Dennison*, 51 Ill. 319; *Howery* v. *Hoover*, 97 Iowa, 581 (66 N. W. 772); *Whittemore* v. *Fisher*, 132 Ill. 243 (24 N. E. 636). And in our opinion it is of no consequence, under the terms of a mortgage like the one in hand, that he takes possession before the maturity of the note. If he exercises a right given him by the mortgage, and takes possession before the note becomes due, he is bound to exercise the same degree of diligence in selling and disposing of the property as if the note had matured. * * His right to take possession is for the purpose of foreclosing his mortgage by selling and applying the proceeds of the property to the payment of his debt. And when he takes such possession he must proceed diligently to foreclose, or he will be required to ac-

count to the mortgagor for the value of the property taken.''

3. In that case, as in the instant case, the property declined in value after possession was taken by the mortgagee, and before he proceeded to sell. Applying these authorities to the instant case, the defendant is liable to the plaintiff for the value of one half of all the partnership property, as of December 15, 1919.

All of the parties agree that the herd of cattle owned by the partnership in the instant case is a superior herd. All of the steers, which had been owned by the partnership, had been sold. The larger part of the herd remaining were stock cattle, which were purchased for breeding purposes. The object of the partnership was to build up a superior herd of beef cattle. The parties agreed that this could not be done in less than ten years.

The defendant claims there was a slump in the price of cattle in December, 1919, but the testimony of a disinterested witness, who testified regarding the value of cattle during that period, is to the effect that the decline in cattle began about April, 1920. The defendant having taken possession of the property and having retained it, should have accounted specifically for the value of all of the property so taken. In the state of the record, we are unable to ascertain how the learned Circuit Judge reached the amount he did in his findings of fact set out in the statement above. We believe, under the circumstances, that every doubt as to the value of the property and the business should be resolved in favor of the plaintiff. He was at the mercy of the defendant. The defendant held a chattel mortgage securing the note, which, by its terms, was past due. The plain-

tiff could not, therefore, withhold possession from the defendant, or prevent the foreclosure. He was helpless.

By the ,conduct of the defendant the object for which the partnership was organized was defeated. The prospect, therefore, of reaping a profit from the partnership was swept away by the conduct of the defendant. His conduct was in direct violation of the partnership agreement. For that reason, we believe that equity and justice requires that the defendant be held to have taken over the partnership property in satisfaction of the mortgage indebtedness owing him by the plaintiff. This conclusion is reached, largely, because we are unable, from the state of the record, to make an accurate and satisfactory accounting between the parties. We can only approximate the value of the property of the partnership converted by the defendant to his own use. The value of the property, so converted .by defendant, approximates the amount of plaintiff's indebtedness to defendant. When the defendant became dissatisfied, he should have pursued the methods provided in his partnership agreement to dissolve the corporation. If he had strictly followed his agreement with the plaintiff, foreclosed the mortgage as provided therein, the court would have been in a position to have accurately applied the law and have done equity between the parties.

Defendant's conduct not only deprived the plaintiff of his interest in the partnership property, but also of every prospect of reaping any benefit from his investment of time and money in the partnership undertaking.

The findings of the Circuit Court in effect charged the defendant with having converted all of the per-

sonal property belonging to the partnership. The chattel mortgage covered only the cattle. The horses, tools and machinery belonging to the partnership were not covered by the chattel mortgage. The value of that property, however, is stated with reasonable accuracy and doubtless was taken into consideration by the Circuit Court in reaching his conclusion. Plaintiff's own testimony, regarding the value of the cattle covered by the chattel mortgage, does not make that value as much as the mortgage indebtedness. The difference is small and is fully covered by the personal property converted by the defendant and not included in the chattel mortgage.

The testimony, regarding damages sustained by plaintiff, is not sufficiently definite and specific to justify any judgment for plaintiff other than costs and disbursements.

The alleged damages claimed by plaintiff for the use of the land during 1921 are not within the issues framed by the pleadings and are not considered in our decision.

The decree of the lower court will be reversed and a decree entered here to the effect that the partnership between the plaintiff and defendant was dissolved December 15, 1919; that the defendant then and there converted to his own use the property of the partnership and all of the interest of the plaintiff therein; that by the conversion by the defendant to his own use of the interest of the plaintiff in and to all the personal property, the promissory note held by the defendant against the plaintiff was paid and the same should be canceled; that the chattel mortgage was thereby satisfied; that the plaintiff and defendant are the owners as tenants in common of the real property described in the quitclaim deed re-

ferred to in plaintiff's complaint, and described in defendant's answer, and that plaintiff recover his costs and disbursements both in this court and in the Circuit Court.    REVERSED AND DECREE ENTERED.

McBRIDE, C. J., and BEAN and BROWN, JJ., concur.