Argued May 8, reversed and remanded May 22, rehearing denied
June 19, 1917.

## MORGAN v. JOHNS.*

(165 Pac. 369.)

**Appeal and Error—Motion for Nonsuit—Exceptions.**

1. Where, at the close of the evidence for the plaintiff, the de-
fendant moved for a judgment of nonsuit, which was denied, any
error of the court in such holding cannot be assigned as a reason for
reversal, where the bill of exceptions fails to show an exception was
taken to the ruling on the motion; it not being error merely, but error
legally excepted to, which is assignable.

———

*"As to the effect of an unauthorized sale or disposal of pledge by
pledgee to dispense with tender, as a condition of trover against
pledgee, see the case of *Austin* v. *Vanderbilt*, 48 Or. 206 (85 Pac. 519,
120 Am. St. Rep. 800, 10 Ann. Cas. 1123, 6 L. R. A. (N. S.) 298), and
note in the last report."

As to pledgee's conversion of pledged property by invalid sale, see
note in 43 L. R. A. 737.                    REPORTER.

### Appeal and Error—"Exception"—Matter in Writing and in Record.

2. Under such circumstances, the bill of exceptions, containing the official stenographer's report of the case, narrating that the defendant objected or demurred to the sufficiency of plaintiff's testimony, with reasons therefor, is not a matter "in writing and on file in the court," so as to fulfill the requirements of Section 172, L. O. L., providing no exception need be taken or allowed to any decision upon a matter of law, when the same is entered in the journal, or made wholly upon matters in writing and on file in the court; as, when the ruling of the Circuit Court on the motion for nonsuit is made, its determination is not wholly on written data before it, but depends mainly on the oral testimony which the judge has heard, and the bill of exceptions when made, relates to the matters already past and contains the testimony which has been reduced to writing since the trial.

### Appeal and Error—Objection to Ruling—"Exception."

3. An exception is an objection taken by the appealing party at the time the adverse ruling was made.

### Trial—Taking Case from Jury—Admissions—Evidence.

4. Where, in an action for conversion, plaintiff alleged sale by defendant of corporate stock held as collateral for a debt due defendant, which transaction defendant pleaded was a sale of stock to a third person, with an option from the vendee to plaintiff to repurchase, on a certain date, at a stipulated price, there was evidence that defendant had stated he held the stock as collateral and that the stock had been pledged to him as collateral, a motion for a nonsuit was properly denied, regardless of other evidence submitted.

### Trial—Instructions—Measure of Damages.

5. In such an action, a requested instruction by defendant that, in case the jury find for the plaintiff, they could only find for nominal damages, was properly refused, as excluding from the consideration of the jury the actual reasonable value of the stock.

　　[As to the fixing of the measure of damages in actions of tort, see note in 91 Am. St. Rep. 729.]

### Pledges—Repledges—Effect on Character of Chattels.

6. Plaintiff, defendant and defendant's wife were engaged in a farming venture. Upon a yearly settlement, plaintiff was short $1,282.73 which defendant arranged to advance to him. A holding corporation for the farm was formed, one third of the stock represented by one certificate being issued to each. Plaintiff claimed he turned his share to defendant as collateral to be used in raising money to pay his balance of the indebtedness. Under such circumstances, an instruction to the effect that a pledge is a transfer of personal property, as a security for a debt or other obligation, which the pledgee has a right to repledge, without the pledgor's consent, but that such new transaction would not change the character of the chattels as being hypothecated for debt, was proper, as between the original parties.

### Pledges—"Once a Pledge Always a Pledge"—Extinguishment.

7. The principle of once a pledge always a pledge applies to chattels hypothecated for a debt until their status has been changed by foreclosure of the lien of pledge or further contract of the parties.

Trover and Conversion—Elements—Sale of Pledge—Instructions.

8. A charge in an action for conversion of corporate stock that if the stock was pledged to the defendant only to secure money with which to repay the defendant for moneys advanced, defendant would have no authority to sell the stock outright, and that if he did, it would constitute a conversion, calling for a verdict for the plaintiff for the reasonable value of the pledge, not exceeding the sum mentioned in the complaint, was proper, in view of the continuing character of the contract of pledge.

Trover and Conversion—Elements—Tender—Discharge of Lien of Pledge—Instructions.

9. Where, in an action for conversion, plaintiff alleged sale by defendant of corporate stock held as collateral for a debt due defendant, which transaction defendant pleaded was a sale of stock to a third person, with an option from the vendee to plaintiff to repurchase on a certain date, at a stipulated price, the court instructed the jury that if the shares were pledged as a security and the plaintiff had tendered or offered to pay the debt, being at the time able, ready, and willing to make the payment, the lien of the defendant would be discharged, and his refusal to return the pledge would be a conversion thereof, on account of which the jury should find for the plaintiff for the reasonable value of the property, not exceeding the amount stated in the complaint, was proper, as such conduct, if found to exist, constitutes conversion, as it is the exercise of an unjustifiable control over plaintiff's property, in derogation of his title to the same.

Damages—Mitigation—Plea of Indebtedness in Conversion—Theory of Pleadings.

10. A defendant, sued for damages for conversion of corporate stock alleged to be pledged to him to secure a debt of plaintiff for advance made by defendant, pleaded general denial and as a separate defense that the transaction was in fact a sale to another with option from the vendee to plaintiff to repurchase on a certain date at a stipulated price, but did not attempt to state any defense for the indebtedness by way of mitigation. *Held*, that defendant is in no position to complain that the court erred in not taking the indebtedness into consideration in the instruction; the theory of the court excluding the subject thereby conforming strictly to the pleadings.

Damages—Mitigation—Necessity for Plea.

11. In a pledgor's action against the pledgee for a conversion of pledged corporate stock, defendant should be required to plead the original indebtedness in mitigation because the jury might actually deduct the amount of the debt and there would be nothing which the pledgor-debtor could plead in bar of a subsequent action to recover it, and because, if litigated in the trover action, the resulting judgment will protect him.

Trial—Instructions—Evidence.

12. An instruction in such an action allowing recovery for plaintiff for the reasonable market value of the shares of stock at the time of conversion is erroneous where there is no evidence of market value.

Trial—Instructions—Conversion—Elements of Damage.

13. An instruction in such an action, that if the jury finds for the plaintiff, damages should be given him for the reasonable value of

the stock, and in ascertaining the reasonable value, the jury should consider the reasonable market value of the "assets" of the corporation, if any, in arriving at the reasonable value of the stock, the verdict to be for such amount as the stock was found to be reasonably worth, *held*, prejudicially erroneous as limiting the jury to a consideration of the assets alone and excluding a consideration of the evidence in the record of the indebtedness of the corporation; both being necessary considerations.

From Union: John W. Knowles, Judge.

In Banc. Statement by Mr. Justice Burnett.

This action is one in the usual form charging the defendant with the conversion of 15 shares of stock in the Union County Farm Company, a corporation, of the value of $9,812.50, the property of the plaintiff, to his damage in that sum.

The answer denies the whole complaint, except as otherwise stated, and then in substance avers that the plaintiff being the owner of the stock mentioned, sold the same to a brother of the defendant taking from the vendee an option to repurchase it on a certain date at a stipulated price and that this transaction constitutes the conversion described as a cause of action.

Substantially the reply controverts the defendant's pleading so far as inconsistent with the complaint and in addition thereto declares:

"That plaintiff at no time bargained and sold said certificate of stock to John G. Johns, and has never at any time seen said John G. Johns and did not know of said John G. Johns until about the 20th day of March, 1914; that no lien as claimed by said John G. Johns or by defendant has ever been foreclosed and on the 22d day of March, 1915, plaintiff, in writing offered to pay defendant and said John G. Johns the sum of $1,440.00, which is the sum of $1,382.73 with interest thereon from the said 10th day of December, 1913, until the date of said offer of payment. That the defendant thereupon refused to return the said certificate of stock upon demand by this plaintiff and still refuses so to do."

The outcome of a jury trial was a judgment for the plaintiff, from which the defendant appeals.

REVERSED AND REMANDED.    REHEARING DENIED.

For appellant there was a brief over the name of *Messrs. Crawford & Eakin,* with an oral argument by *Mr. Thomas H. Crawford.*

For respondent there was a brief over the name of *Messrs. Cochran & Eberhard,* with oral arguments by *Mr. George T. Cochran* and *Mr. Colon R. Eberhard.*

MR. JUSTICE BURNETT delivered the opinion of the court.

1. At the close of the plaintiff's case the defendant moved for a judgment of nonsuit which was denied, and this is assigned as error. On the other hand the plaintiff points out that the bill of exceptions does not disclose any objection by the defendant to this ruling and hence that it cannot be assigned as a reason for reversal, maintaining that it is not error alone but a mistake to which an exception has been regularly taken that will avail the appellant in this court. The defendant seeks to avoid this argument by reference to the statute which says:

"No exception need be taken or allowed to any decision upon a matter of law, when the same is entered in the journal, or made wholly upon matters in writing and on file in the court": Section 172, L. O. L.

The defendant urges that the written bill of exceptions fulfills this rule of procedure so that the decision is indeed made upon matters in writing and on file in the court. We cannot concur in this view because the ruling was not made wholly upon written data then before the Circuit Court. When it was made

84 Or.—36

the determination of the application for nonsuit depended mainly upon the oral testimony which the judge had heard, and although that has been reduced to writing by the official stenographer since then, and appears in certified form attached to the bill of exceptions, yet it does not alter the situation as it existed before the Circuit Court when the motion was denied. The recitals of the bill of exceptions relate to matters already past when that document was framed. It narrates that the defendant objected or, in other words, demurred to the sufficiency of the plaintiff's testimony, but it does not appear therefrom that any objection was made to the ruling of the court on the motion for a nonsuit. This much to settle the question of practice suggested by the discussion to which allusion has been made. In brief, the bill of exceptions must not only show what the ruling was, but also that the party appealing objected to the decision at the time it was made.

2. On the merits, however, the determination of the motion for a nonsuit was correct for we find in the report of the testimony sent up for the purpose of explaining the matter that there was enough to take to the jury the question of whether the deposit of the stock with the defendant was a pledge or a sale. The statement of the defendant that he had taken the shares as collateral, as related by the witness Holmes, and his other admission to the same witness that the stock had been pledged to him for the loan are sufficient in themselves to support the ruling on the motion. This being true it eliminates from our consideration the error assigned on the refusal of the court to direct a verdict for the defendant at the close of all the testimony.

3. From the evidence it appears that Morgan was the owner of an undivided third of a tract of agricultural land in Union County, the remainder of which was the property of the wife of the defendant for whom the latter was acting. This realty was heavily encumbered. The plaintiff had farmed the same during the crop year of 1913 and when settlement of their affairs was made at the end of the season he lacked $1,282.73 of having money enough to pay his share of the expenses and what was due at the time upon the encumbrances. It seems that the defendant arranged to advance that money for him. In connection with the transaction, they formed the corporation mentioned in the complaint and one third of the capital stock, fifteen shares, was issued to the plaintiff. His contention is that he pledged the same to the defendant to be used in raising money to pay his balance of the indebtedness; while the latter maintains that the plaintiff sold the stock absolutely to the person named in the answer as vendee. As all this was done concurrently with the formation of the company naturally there could be no market value of the stock for there had been no sale for the same. In that connection the defendant requested the court to charge the jury thus:

"I further instructed you that there is no evidence in this case upon the question of the market value of this stock, or as to whether or not it had a market value and that if you find for the plaintiff in this case, you can only find for nominal damages,—that is, one cent, or one dollar, or some nominal sum."

It was no error to refuse this instruction because it excluded from the consideration of the jury the actual reasonable value of the stock although it was not known in the market and hence could not have what is called market value.

4, 5. The defendant takes exception to a charge of the court to the effect that a pledge is a transfer of personal property as a security for a debt or other obligation which the pledgee has a right to repledge without the pledgor's consent, but that this new transaction would not change the character of the chattels as being hypothecated for debt. The principle is that once a pledge always a pledge until the status of the same has been changed by foreclosure or further contract of the parties. As between the litigants the instruction was an amplified statement of this doctrine and is not subject to criticism on that ground.

6. The same precept applies to the further charge of which the defendant complains and which states in substance that if the stock was pledged to the defendant only to secure the money with which to repay himself he would have no authority to sell the same outright, and if he did it would constitute a conversion calling for a verdict for the plaintiff for the reasonable value of the pledge not exceeding the sum mentioned in the complaint.

There is assigned as error also the instruction of the court to the purport that if the shares were pledged as a security and the plaintiff had tendered or offered to pay the debt, being at the time able, ready and willing to make the payment, the lien of the defendant would be discharged and his refusal to return the pledge would be a conversion thereof on account of which the jury should find for the plaintiff for the reasonable value of the property not exceeding the amount stated in the complaint.

7. The conduct of the defendant as described in that instruction does indeed constitute a conversion because it is the exercise of an unjustifiable control over the plaintiff's property in derogation of his title to the

same. The plaint of the defendant is that the court left out of consideration the amount of the debt for which the shares were pledged. The defendant, however, is in no position to complain of this for, as stated by Mr. Chief Justice BEAN in *Springer* v. *Jenkins,* 47 Or. 502 (84 Pac. 479):

"The defendants cannot invoke this rule, because they have not pleaded the amount due on the mortgage in mitigation of damages."

8. If, indeed, the defendant has wholly made way with the plaintiff's property and is charged with the same in trover the only method by which he can put in the indebtedness as a defense is to plead it in mitigation of damages, as taught by *Springer* v. *Jenkins, supra.* In this case there is no attempt to state any such defense. The complaint on the one hand charges direct conversion. The answer denies this. No mention whatever of indebtedness is made in the defendant's pleading. For want of this he has no standing to complain of this instruction for it conforms to the pleadings made by the parties. A good reason for requiring the indebtedness charged against a chattel to be averred in mitigation of damages for conversion of the property, is that otherwise the jury might actually deduct the amount of the debt and there would be nothing in the record which the debtor could plead in bar of a subsequent action to recover it. On the other hand, if the claim is litigated in the trover action by way of reducing the damages the resulting judgment will protect the debtor from further exactions.

The remaining error assigned by the defendant is predicated upon this direction given to the jury at the trial:

"I further instruct you that if you find for the plaintiff, you should give your verdict for damages in a sum

equal to the reasonable market value of said shares of stock at the time of conversion, if any, or within a reasonable time thereafter, and if you find that the said shares of stock have no market value, then in ascertaining their reasonable value, you will consider the reasonable market value of the assets of said corporation, if any, in arriving at the reasonable value of said stock, if any, and your verdict should be for such amount as you may find said stock to be reasonably worth.''

9. This charge was materially erroneous. In the first place there was no evidence about the reasonable market value of the stock for as we have seen, it had never been known on the market. It then remains to consider the rule by which to determine its reasonable value.

10. The court was wrong in limiting the jury as it did to a consideration of the reasonable market value of the assets of the corporation in arriving at the just valuation of the stock. We have almost daily instances of corporate concerns which have considerable assets but whose indebtedness far exceeds the worth of the property. It is common sense to say that the value of the stock of the institution would be nil under those circumstances. In such an investigation we must necessarily consider not only the value of the assets, but also the amount of the indebtedness. The instruction was also bad in this respect.

11. The plaintiff, however, charges that the correctness of the verdict can be ascertained by computation of figures shown in the testimony as to the amount of indebtedness and the value of the land. We cannot, however, determine from the record whether the jury took the opinion of the witnesses as to the worth of the realty at the highest price mentioned in the evidence and then deducted the amount of the indebtedness or whether they merely discounted the estimate

of the witnesses without reference to the debt. If they did the latter, it would strictly conform to the instruction of the court as to the formula for ascertaining the reasonable value of the shares. There is a diversity of views of the testimony either one of which might be assumed as a starting point in calculating the proper value of the stock to be assessed in a verdict and it is possible that a result might be figured from some of these bases substantially equivalent to the one set down by the jury. It is impossible, however, for us safely to enter upon such a quest on the record before us. The trial by jury is the proper method for solution of the question. For this mistake in directing the jury in effect to consider only the assets of the concern in assessing the value of its stock, the judgment must be reversed and the cause remanded for further proceedings.

REVERSED AND REMANDED. REHEARING DENIED.