Motion to dismiss appeal denied January 22; argued at Pendleton
May 7; modified June 11, 1935

PEDRO ET AL. *v.* VEY ET AL.

(39 P. (2d) 963, 46 P. (2d) 582)

*Raley, Kilkenny & Raley,* of Pendleton, for the motion.

*James F. Ailshie,* of Coeur d'Alene, Idaho, *R. I. Keator,* of Bonners Ferry, Idaho, *J. B. Perry,* of Pendleton, and *Burleigh & Burleigh,* of La Grande, opposed.

CAMPBELL, C. J. On July 18, 1934, a judgment was entered against plaintiffs in the circuit court of

the state of Oregon for Umatilla county. On September 15, 1934, plaintiffs filed notice of appeal, and on September 25, 1934, filed an undertaking thereon. To this undertaking no exceptions were filed, thus plaintiffs' appeal became perfected October 1, 1934: Oregon Code 1930, § 7-503, subd. 4. Appellants had until and including October 30, 1934, in which to file their transcript in this court: Id. § 7-507.

On October 20, 1934, appellants filed in said circuit court and served on respondents a motion asking for an order extending the time 60 days in which to file said transcript. On October 22, 1934, the circuit court entered an order granting said motion and extending the time as therein requested. The transcript was duly filed in this court on December 20, 1934, and within the time thus fixed by the said order.

On December 27, 1934, respondents moved to dismiss the appeal for the reason that the circuit court was without power to make the order of extension at the time it was made, having been made within the three-day period from the date of service of the motion on the respondents.

■ If the order extending the time is void, then the transcript was not filed within the 30 days from the time the appeal was perfected and the appeal should be considered abandoned.

"2. If the transcript or abstract is not filed with the clerk of the appellate court within the time provided, the appeal shall be deemed abandoned, and the effect thereof terminated, but the trial court or the judge thereof, or the supreme court or a justice thereof, may, upon such terms as may be just, by order enlarge the time for filing the same, but such order shall be made within the time allowed to file transcripts, and only after three days' notice has been given to the opposing party; * * *" Section 7-507, subd. 2.

The statute is mandatory in its provisions when a failure to comply therewith will injure the public or a third party: *Simpson v. Winegar,* 122 Or. 297 (256 P. 562), and numerous cases cited therein.

■. Respondents had notice of the motion and did not object to the court granting it, either before or after the order was signed. There was ample time in which the court could grant the extension. It would not lose jurisdiction until after the 30th of October, 1934.

Respondents rely on *Simpson v. Winegar,* supra. In that case, no notice was given to respondent and the court did not obtain authority to make the order. In the instant case, notice was duly given respondents and the court would have full authority to make the order at the expiration of the three days from the date of service or at any time thereafter up to and including October 30, 1934. The respondents suffered no injury by reason of the order being made prematurely. The order was irregular but not void. This principle of law is analogous to where a judgment is entered prematurely: *Woodward v. Baker,* 10 Or. 491; *Altman v. School District,* 35 Or. 85 (58 P. 291, 76 Am. St. Rep. 468) ; *Hodgdon v. Goodspeed,* 60 Or. 1 (118 P. 167).

The motion to dismiss is denied.

ON THE MERITS
(46 P. (2d) 582)

*S. H. Burleigh,* of La Grande (James F. Ailshie, of Coeur d'Alene, Idaho, R. I. Keator, of Bonners Ferry, Idaho, J. B. Perry, of Pendleton, and Burleigh & Burleigh, of La Grande, on the brief), for appellants.

*J. R. Raley* and *J. F. Kilkenny,* both of Pendleton (Raley, Kilkenny & Raley, of Pendleton, on the brief), for respondents.

BELT, J. Plaintiffs commenced an action at law to recover damages in the sum of $100,000 for the conversion of certain property leased by them from the defendants Joe Vey and his wife Rita Vey, an aged couple who have extensive land holdings in eastern Oregon. Mary M. Pedro, a daughter of the defendants Vey, and August Stad had for many years been engaged in the cattle and sheep business as copartners. On October 29, 1932, the plaintiffs leased from the defendants Vey approximately 60,000 acres of land in Morrow, Union, and Umatilla counties, together with 10,656 head of sheep, at a rental of $10,000 per year. The lease would expire on October 1, 1936. It is the contention of the plaintiffs that the defendants, in violation

of the terms of the lease, took possession of such property on October 11, 1933, and exercised dominion over the same inconsistent with their rights as lessees. Plaintiffs ask compensation for the loss sustained by them in the operation of their sheep business. No special damages were pleaded.

To the amended complaint the defendants Vey filed a cross-bill in equity setting forth verbatim the lease and alleging numerous violations of its terms by the plaintiffs. The Veys aver that at the time they took possession of the property on October 13, 1933, the plaintiffs had, among other things, failed and refused to pay the rent due amounting to a balance of $11,900, and had permitted taxes on the property to become delinquent in a large amount. It is their contention that they took possession under and by virtue of the terms of the lease.

The defendants Vey also allege that, prior to the commencement of the action, the plaintiff August Stad had turned over to them all his right, title, and interest in the lease. Defendants further allege that the plaintiffs failed to keep on hand the number of sheep specified in the lease under the age of five years and the amount of hay as provided therein and that, by reason thereof, an accounting is necessary. It is further alleged that the plaintiffs are insolvent and if they can not offset their claims against those of the plaintiffs "these defendants will be without a remedy and will be unable to satisfy judgments obtained against the plaintiffs". It is further alleged, in substance, that, by virtue of the lease, the defendants Vey had a lien and mortgage on the interest of the lessees in the personal property described in the lease, to secure payment of rental and the faithful performance of the other terms and conditions provided therein. Defendants Vey, in

their prayer, ask: (1) That the action at law be restrained and enjoined; (2) that they have judgment and decree against the plaintiffs for sums covering rental due, amounts paid by them to obtain release of herders' and camp tenders' liens and for sums paid by them covering taxes due in Morrow, Union, and Umatilla counties; (3) that the foregoing sums be declared a first and prior lien upon the interest of the plaintiffs in the property described in the lease, and that the mortgage lien be foreclosed; (4) that the plaintiffs account for the missing sheep, hay, and other personal property, and that, in the event the plaintiffs are unable to account for the same, judgment be awarded for the reasonable value thereof; (5) that the amounts found to be due from plaintiffs be offset against any claim that the plaintiffs may have against them; and (6) for such further relief as to a court of equity may seem meet and proper.

The defendants Monese and Boylen by separate answer in substance admitted that they took possession of some of the property described in the plaintiffs' complaint, but that they did so "under the direction and pursuant to the order of the defendants Joe Vey and Rita Vey". They further deny that the plaintiffs have been damaged by reason of the alleged conversion. In their prayer, they ask that equity jurisdiction be assumed and that plaintiffs' complaint be dismissed.

The plaintiffs demurred to the cross-bill of the defendants Vey and the further and separate answer of the defendants Monese and Boylen for the reason that neither of them stated a cause of defense to an action for conversion and that equity did not have jurisdiction of the cause. The court overruled the demurrers, whereupon plaintiffs filed a reply, thus putting the case at issue.

The trial court, over the objection and protest of the plaintiffs, assumed equitable jurisdiction and, upon hearing, found that the leasehold interests of the plaintiffs were of no value, but allowed damages against all the defendants in the sum of $1,085 for the conversion of 875 head of old ewes owned by the plaintiffs. The court also allowed as a set-off against such award various claims of indebtedness against plaintiffs and accordingly entered a decree in favor of the defendants Vey and against the plaintiffs in the sum of $25,713.75, together with interest thereon at the rate of 6 per cent per annum, and for the further sum of $450 as interest due and owing on the principal sum to July 18, 1934. From this decree the plaintiffs appeal and the defendants cross-appeal.

### On Motion to Dismiss Appeal

 Counsel for defendants strongly urge that the appeal of the plaintiffs be dismissed for the reason that the order extending the time for filing the transcript in this court was made without having first given three days' notice of such application, as required by subdivision 2 of section 7-507, Oregon Code 1930. Mr. Chief Justice CAMPBELL, speaking for the court, denied this motion as shown by the opinion herewith reported. We have again carefully considered the question as to whether this court lost jurisdiction by reason of the premature entry of the order for extension of time and are convinced that the conclusion reached in the above opinion is sound. A judgment entered before expiration of time for answering after service of summons is, according to the great weight of authority, irregular, but not void: Freeman on Judgments (5th Ed.) § 357; *Paramount Publix Corporation v. Boucher,* 93 Mont. 340 (19 P. (2d) 223). To hold that an order

prematurely entered concerning a matter of procedure would be void and that a judgment so entered would be only irregular does not comport with our views concerning the proper administration of justice. Defendants had their remedy in a motion to set aside the order, but, having failed to avail themselves of it, we think they are precluded from complaining at this time. We are not dealing with a case where no notice whatever was given as in *Simpson v. Winegar,* 122 Or. 297 (258 P. 562).

## On the Merits

At the very threshold of the case it is urged by the plaintiffs that equity had no jurisdiction of the cause and that it should have been tried as an action at law. The matters alleged in the cross-bill are clearly not beyond the pale of equitable cognizance and we think it was not beyond the inherent power of equity to grant relief as demanded in the cross-bill. In other words, equity had jurisdiction of the subject matter. The real objection of the plaintiffs is that the defendants had adequate relief at law and it was not a cause for the proper exercise of equitable jurisdiction. This point, however, we think was waived when, after the overruling of the demurrer to the cross-bill, plaintiffs filed a reply thereto. After having submitted to such forum, plaintiffs at this time are not in a position to assert that adequate relief could have been obtained at law. The precise question was considered by this court in *South Portland Land Co. v. Munger,* 36 Or. 457 (54 P. 815, 60 P. 5), and in *Wollenberg v. Rose,* 41 Or. 314 (68 P. 804), and decided adversely to the contention of the appellants. In both the cases cited the plaintiffs therein followed the same procedure as plaintiffs in this case and the same contentions were made with reference to

the exercise of equitable jurisdiction. Mr. Chief Justice WOLVERTON, speaking for the court in the Munger case, said:

"By answering, the defendants have made the equitable forum a matter of their own selection, and have thereby waived the right to insist that the cause should be first tried out at law."

The same language was used by this learned jurist in the Wollenberg case. We are not unmindful of the elementary rule that the parties cannot confer jurisdiction of the subject matter. That does not mean that there can be no waiver of the right to object to the forum.

The defendants are charged as joint tort-feasors with having converted property in which the plaintiffs had a special or limited interest by virtue of a lease. Whether the defendants are guilty of conversion depends upon a proper construction of the lease relative to the right of the lessors to possession. Hence we set forth those parts of the lease pertinent to the above inquiry.

"The lessees hereby agree that they will farm and care for said personal property to the entire and complete satisfaction of the lessors; and in this connection it is understood that entire and complete satisfaction are used in a reasonable sense, and that such right shall not be an arbitrary right, but the right of termination of this lease shall exist only where there is a *substantial breach of any of the covenants* or conditions of this lease. If the breach consists of non-payment of rent, taxes, forest fees, or other payments herein agreed to be made by the lessees strictly as herein provided, and time is hereby made the essence of this agreements, or consists of the failure to perform any other condition herein contained, then the *lessors shall give the lessees 60 days written notice within which to comply with the terms of the lease,* specifying the manner in which the

lessors are claiming the lease is not being complied with and in that event if the lessees shall fully remedy such conditions and comply with the terms of this lease during such period, then no forfeiture shall be declared for the breach specified in such notice.

\* \* \* \* \*

"It is agreed that the lessees shall during the term of this lease *have full control and use of all of the livestock* and equipment *herein leased* during the continuance hereof and are to exercise full control and use of *such property in such manner as they see fit, subject to the terms of this agreement,* and may sell the same or any part thereof, except as hereinafter stated, or all or any of the increase or wool therefrom at such times as they may desire, but not to an extent to deplete the said sheep and equipment below the amount hereinbefore agreed to be returned upon the termination of this lease, and subject to the terms of this agreement shall have the sole right to use, handle, and deal with the said property as if it were their own property.

\* \* \* \* \*

"In the event of the failure of the lessees to comply with any provisions of this lease, the lessors may at their option terminate the same and take possession of property hereinabove described, *subject to the provisions herein stated as to written notice,* and if there be at that time any amounts due and owing from the lessees to fully comply with all of the terms of this lease, then the lessors may at their option bring suit upon *this agreement to foreclose the lien herein given,* and in such suit the amount then due from the lessees to the lessors may be determined and judgment given therefor, and any amounts due the lessors shall bear interest at 8 per cent per annum from the time the same are due, until paid, and such decree may provide that the interest of the lessees in and to any sheep, or the increase thereof, on which a lien is hereby given, or other personal property on which a lien is hereby given, may be sold under decree of the court and the proceeds applied to the payment of

the costs and disbursements of such suit, including such sum as the court shall adjudge reasonable as attorneys fees, and such amount as may be then due and owing the lessors, *but nothing herein contained shall limit any other remedy which the lessors might otherwise have.*

 \* \* \* \* \* ,,

[Italics ours.]

It is conceded that no notice was given plaintiffs, or either of them, prior to the time the defendants took possession. After the Veys obtained possession the premises and sheep were leased to the defendant Boylen. Certain sheep which the plaintiffs owned were sold by the Veys. After taking possession on October 13, 1933, the Veys later gave Mary M. Pedro written notice of alleged violations of the lease. The 60 days' time for complying with the terms of the lease expired on December 21, 1933.

It is the theory of the defendants that the Veys or their agents had the right to possession without giving the 60 days' notice specified in the lease if the lessees were in default in payment of rent or had otherwise breached the terms and conditions of the lease. The plaintiffs assert that they were entitled to 60 days' notice to comply with any provisions of the lease alleged to have been violated before defendants had the right to enter possession. What the defendants actually did was to take possession and then give the 60 days' notice. After the defendants took possession they served on the plaintiff Mary M. Pedro, on October 21, 1933, a notice specifying the particulars in which they claimed the lease had been breached and demanded an immediate settlement and adjustment of the same. Before the 60-day period had expired, however, the premises and the sheep in question were leased to the defendant Boylen, and the 875 ewes heretofore mentioned, belonging to the plaintiffs, were sold. It is clear that, if the

possession was wrongful under the terms of the lease and such dominion was exercised over the property as above stated, the defendants were guilty of conversion.

We now turn to the consideration of the lease to ascertain whether defendants Vey were thus entitled to possession under its terms. The intention of the parties is the guiding star. It is apparent from the lease that it was not to be terminated unless there was a substantial breach of one or more of its covenants. After such alleged breach, it was incumbent upon the lessors to give the lessees 60 days' written notice specifying the manner of such breach, during which time the lessees would be given an opportunity to comply with its provisions. We are unable to agree with the defendants that the lease contemplated the services of such notice after the lessors had taken possession and thus deprived the lessees of the opportunity to comply with its terms. If the construction of the defendants be adopted, then the provision granting to the lessees "full control and use of all the livestock and equipment herein leased" would be of no force or effect. We inquire: How could the lessees comply with the demands of the lessors relative to any alleged breach of the covenants after they had been deprived of possession? We observe that the provisions of the lease relative to option of the lessors to institute a suit to foreclose their lien and the right to take possession for such purpose are "subject to the provision herein stated as to written notice". We agree that, when there has been a breach of the covenants of a chattel mortgage, the mortgagee, under and by virtue of section 54-207, Oregon Code 1930, is entitled to immediate possession of the mortgaged property, but we think such statute does not control where the parties have seen fit to provide by contract the terms and condi-

tions under which the mortgagee would be entitled to possession.

At any rate, it is evident that the defendants Vey did not take possession for the purpose of foreclosing the mortgage lien as the property was leased to Boylen. Assuming, however, that they did take possession for such purpose, they would not be authorized to exercise absolute ownership and dominion over the property (Cooley on Torts (4th Ed.) § 333); but would be obliged to proceed with foreclosure. In the instant case the lease provided no method of foreclosure but contemplated an independent suit.

■ Having concluded that, under a proper construction of the lease, the defendants were guilty of conversion, it is plain that the matters set forth in the cross-bill constitute no defense. To the charge of conversion the defendants have, in effect, said "We took possession under and by virtue of the lease." However, as above stated, the lease did not authorize such possession. Hence, if such defense be excluded, there remains only the claim of indebtedness against the plaintiffs which may be considered as in the nature of an equitable counterclaim.

■ Since the plaintiffs had only a special or limited interest in the property alleged to have been converted, they would not be entitled under the general rule to recover the full value of the property at the time and place of conversion. The measure of damages in the instant case is the difference between the reasonable value of the leasehold interest and the mortgage indebtedness: Sedgwick on Damages (9th Ed.) § 497e; *Laam v. Green,* 106 Or. 311 (211 P. 791).

■ As the plaintiff August Stad has by written instrument released his one-fourth interest in the lease and aided and assisted the defendants in securing pos-

session of the property, he will be eliminated from consideration relative to the damages sustained by reason of the conversion of the property covered by the lease. He is not, however, precluded from recovering damages for conversion of the sheep absolutely owned by the plaintiffs. The plaintiff Mary M. Pedro is, therefore, entitled to recover as damages the reasonable value of her three-fourths interest in the leasehold agreement: Sedgwick on Damages (9th Ed.) § 497b; 26 R. C. L. 1152; 65 C. J. 132.

It is urged, however, by the plaintiffs that their alleged indebtedness to the defendants Vey can be considered only in mitigation of damages when so pleaded and that, since the defendants have not made such plea, such indebtedness should be excluded. This presents a very difficult and perplexing question in the light of of all that has been said by this court on the subject. In *Springer v. Jenkins,* 47 Or. 502 (84 P. 479), which was tried as an action at law, the court recognized the rule that where there has been a wrongful conversion by a mortgagee the measure of damages is the difference between the value of the property at the time of conversion and the amount of the mortgage indebtedness, but refused to apply it for the reason that the defendants therein had not "pleaded the amount due on the mortgage in mitigation of damages". In *Swank v. Elwert,* 55 Or. 487 (105 P. 901), the court refused to follow such rule, saying, "We do not consider that to be the law", and proceeded to consider the matter as an open question. It was further said, "The mere statement of the rule shows that the allowance of the amount of the mortgage is of the substance of the rule, and not by way of mitigation; that the recovery is the value of plaintiff's right in the thing, the residuary value of the chattel after deducting the amount of the mortgage debt." Later, in *Mor-*

*gan v. Johns,* 84 Or. 557 (165 P. 369), which was an action at law, the court passed *Swank v. Elwert,* supra, without comment, and said: "If, indeed, the defendant has wholly made way with the plaintiff's property and is charged with the same in trover the only method by which he can put in the indebtedness as a defense is to plead it in mitigation of damages, as taught by *Springer v. Jenkins,* supra." Also, in *Barber v. Motor Investment Co.,* 136 Or. 361 (298 P. 216), an action at law to recover damages for alleged conversion, the court cited *Morgan v. Johns,* supra, and quoted with approval from *Springer v. Jenkins,* supra, to the effect that a mortgage indebtedness in such action will be considered only in mitigation of damages. In *Laam v. Green,* supra, an action for conversion tried before a court with a jury, the measure of damages is adhered to as above stated and the court permitted the plaintiff mortgagor to recover the value of chattels converted after deducting the amount of chattel mortgage indebtedness. In *Nash v. Jaynes,* 126 Or. 64 (268 P. 746), which was commenced as an action at law, the second and third causes of action sounding in conversion, the defendant filed a cross-bill in equity and asked for the foreclosure of an equitable lien on the property alleged to have been converted. The trial court dismissed the plaintiff's complaint and rendered a decree in favor of defendant foreclosing the chattel mortgage and such decree was affirmed on appeal. An examination of the briefs on file in that case discloses that the question now under consideration was not pleaded. The writer confesses inability to reconcile these various decisions and will, as said in *Swank v. Elwert,* supra, consider it an open question.

It seems illogical to announce the measure of damages in an action for conversion by a mortgagor

against a mortgagee to be the difference between the value of the property converted and the mortgage indebtedness and then to assert that such indebtedness can be considered only in mitigation of damages. In the instant case the plaintiffs have only a limited interest in the property converted and it would seem that when the mortgage lien equalled or exceeded such interest the plaintiff mortgagors would be precluded from recovering general damages. It is not a question of mitigation of damages. It is rather one wherein equity, having assumed jurisdiction, will render complete relief and thereby avoid a multiplicity of suits. The tort of which plaintiffs complain arose out of a breach of the contract. The indebtedness which the defendants seek to set off against the damages arising by reason of the conversion likewise arose by reason of the breach of the covenants of the lease. We see no good reason why there should not be a disposition of the entire controversy and shall proceed accordingly.

■ The evidence is conflicting relative to the reasonable value of the leasehold interest of the plaintiffs. Some of the witnesses called by defendants who had extensive experience in the sheep business in eastern Oregon testified that, in view of the rental and the taxes which the lessees were obliged to pay and the general economic conditions affecting the sheep industry, the leasehold interests of the plaintiffs were of no value. On the other hand, Mr. F. W. Falconer, a witness for the plaintiffs, who has extensive land holdings and has had many years' experience in the sheep business, testified that the leasehold agreement was reasonably worth the sum of $22,500. Such opinion, however, was based on the assumption that the sheep were of the ages specified in the lease and that the

land and grazing rights existed as therein provided. The trial court, in view of the fact that the lessees had failed to keep the sheep up to the standard provided by the lease, by having a large number of ewes in excess of the age of five years, refused to give any weight to the testimony relative to value of the leasehold offered on behalf of the plaintiffs. While the facts referred to no doubt lessened the weight to be given to Falconer's testimony, we do not think it should be utterly excluded from consideration. It would greatly extend this already lengthy opinion to review the evidence relative to this phase of the case and we shall be content to fix the value of the plaintiff Mary M. Pedro's interest in the leasehold agreement in accordance with what we think is fair and equitable in the light of the evidence. We concur in the findings of the trial court that the plaintiffs August Stad and Mary M. Pedro are entitled to the sum of $1,085 for the conversion of 875 head of old ewes which were owned by the plaintiffs. The value of the three-fourths interest of the plaintiff Mary M. Pedro in the leasehold agreement is fixed at the sum of $10,000.

Plaintiffs complain because they are not allowed damages for the loss of anticipated profits. In the absence of any pleadings asserting special damages, the matter of profits can only be considered in determining the reasonable value of the leasehold agreement. It was proper, therefore, to offer evidence showing costs of production and operation of the sheep plant and the profits that had been made on the sale of the sheep and the wool, in order to afford a basis for determining the value of the lease, but evidence of anticipated profits was entirely too speculative to be permitted. The case is wholly dissimilar to that of *Preble v. Hanna,* 117 Or. 306 (244 P. 75), where

loss of profits was allowed by reason of a wrongful interference with the soap business. There the plaintiff Preble had contracts for the manufacture and delivery of soap at an agreed price and the court very properly awarded damages for loss of profits.

The claim of indebtedness against the plaintiffs included rental due October 1, 1933, amounting to a balance of $11,900, together with interest; the sum of $4,816.27 for delinquent taxes which the defendants Vey were obliged to pay; various sums paid by the defendants Vey to obtain releases of sheep herders' and camp tenders' liens; the sum of $6,282, the difference between the value of the sheep returned and the value of the sheep called for under the contract; the sum of $400, the value of the hay which should have been returned under the lease; and the sum of $448.50 advanced by the Veys to the plaintiffs in order to carry on operation of the sheep plant. All such claims, as allowed, are specifically enumerated by the trial court in its findings of fact. The evidence fully substantiates such findings and we concur in the same. It remains only to set off the aggregate amount of these claims as found by the trial court against the amount of damages awarded to the plaintiffs by this court, and to enter a decree in favor of the defendants Vey for the difference between their claims and those of the plaintiffs.

The decree of the lower court will thus be modified and the cause remanded with directions to enter one in accordance with this opinion. Neither party will recover costs or disbursements in this or in the lower court.

CAMPBELL, C. J., not sitting.